F. S. WING, Appellant, v. CREDIT GUIDE COMPANY et al., Appellees.

**FRAUD:** Acts Constituting—Irregular Issuance of Corporate Stock. 1 Principle recognized that one may not predicate fraud on facts concerning which he had the fullest knowledge prior to parting with his money. So held in a transaction involving the purchase of corporate stock.

**CORPORATIONS:** Certificates of Stock—Issuance in Payment for 2 Money Advancements—Legality. A corporation may validly issue its stock in payment of bona fide advancements of money to the corporation.

*Appeal from Marshall District Court.*—J. W. WILLETT, Judge.

SATURDAY, OCTOBER 20, 1917.

THE opinion sufficiently states the case.—*Affirmed.*

*C. H. Van Law,* for appellant.

*Boardman & Lawrence,* for appellees.

WEAVER, J.—The petition is drawn in two counts. The first count is entitled in equity to compel the individual defendants A. H. E. Mathews, Helen E. Boggie and C. H. E. Boardman to return to the Credit Guide Company, a corporation, the sum of $1,250, alleged to have been withdrawn or appropriated from the corporate funds by the said defendants. The second count is entitled as at law, and seeks recovery of said sum of $1,250 as damages occasioned to the plaintiff by the fraud of said individual defendants in the sale to him of stock in said corporation. Defendants having denied both claims, the issues were tried to the court without a jury. The court found that neither of the two claims sued upon had been sustained by the evidence, dismissed the petition and taxed the costs to plaintiff, who appealed.

1. FRAUD: acts constituting: irregular issuance of corporate stock.

The argument for appellant is directed entirely to the proposition that fraud was practiced upon the plaintiff, and that the stock was void as being issued in disregard of the statute. The claim of fraud rests entirely upon the testimony of the plaintiff, and may be reduced to the statement that he was induced to purchase $1,000 of the capital stock of the corporation by the representations made by defendants, to the effect that the total issue of stock ($2,000) represented actual payments to the corporation of that amount, when in fact such alleged payments had never been made. The preponderance of the evidence fairly shows that the exact and true financial condition and history of the corporation and the manner in which the stock subscriptions had been paid were fully revealed and made known to the plaintiff before he purchased and paid for the Boggie shares. The individual defendants had been the promoters of the company, had organized its business, and had for some time been endeavoring to get it upon its feet

as a going concern. They gave their personal notes to a bank, which supplied the needed ready money, and became otherwise individually obligated, so that, at the time plaintiff appeared upon the scene, the total amount of the investments in the corporation was, in round numbers, $2,000. The stock was not in fact issued until the transactions hereinafter mentioned. At the time Miss Boggie's interest was about to be transferred to the plaintiff, the matter of the advancements and payments made by the individual defendants did not fully appear on the books of the corporation, or at least it did not appear of record that the stock issued had thus been paid for. A corporate meeting was held, and the individual defendants delivered or deposited with the treasurer their several checks, aggregating $2,000, and stock to that amount was issued to them, and later on the same day, the same amount was checked back to them by the treasurer. As a part of the amount charged against the company consisted of outstanding obligations on which these defendants had become individually responsible, it was arranged that they should assume and pay such indebtedness, and the evidence tends to show that this has been done. It is this transaction which the plaintiff assails, on the ground that it was a mere sham to make it appear to him that the stock had been paid for in full when such was not the truth. But it is fairly shown that he was in no manner deceived, and that he knew the stock had been fully paid for in money advanced and furnished and in the personal assumption of liability for corporate debts, and that, if defendants were held to repay to the treasury the sum of $2,000 represented by the checks above mentioned, it would be, in effect, a double collection of the amount of their stock subscription.

The plaintiff is the party charging fraud, and the burden is upon him to establish it by a preponderance of the

evidence.   In this we think he has failed, and the preponder-
ance of the evidence is in fact with the defendants, that he
was in no manner misled by any representations on their
part.   Repeatedly, as a witness, he reiterates the statement
that the one thing he complains of is the misleading effect
of the apparent payment of $2,000 into the treasury on the
day the stock was issued.   Yet he concedes that, if not
present at the meeting at which all this was done, he was
was present immediately afterwards, and was given the
written minutes of the meeting, showing not only the de-
posit of the $2,000, but also its immediate withdrawal.   It
is quite impossible that he should have been deceived, and
the trial court did not err in refusing him a recovery.

2. CORPORATIONS:
certificates of
stock: issu-
ance in pay-
ment for
money ad-
vancements:
legality.

This is not a case coming under the ban
of the statute which prohibits the issue of
stock for other than a money payment of the
subscription, except upon permission given
by the state executive council.   The money
had been paid to or for the corporation,
though the stock had not yet been formally issued, and
there is nothing in the language or intendment of the statute
which forbids recognition by the corporation of payments
and expenditures so made in its behalf, or the issuance of
its stock to the amount thereof.

There is no good ground for a reversal, and the judg-
ment below is—*Affirmed.*

GAYNOR, C. J., PRESTON AND STEVENS, JJ., concur.