FIRST NATIONAL BANK OF ALTA, Appellant, v. A. R. BROWNE
et al., Appellees.

**COMPROMISE AND SETTLEMENT:** Consideration — Unfounded
Claim. The good-faith assertion of a possibly unfounded claim fur-
nishes ample consideration for the execution of a promissory note
executed in settlement of the dispute.

Headnote 1: 12 C. J. pp. 324, 330.

*Appeal from Buena Vista District Court.*—D. F. COYLE, Judge.

JANUARY 20, 1925.

OPINION ON REHEARING APRIL 7, 1925.

ACTION on promissory note, secured by mortgage. Defendant claims credit for $909 thereon, and from a judgment of foreclosure, in which defendant was given credit for the $909, plaintiff appeals.—*Modified and affirmed.*

*Whitney & Whitney,* for appellant.

*C. H. Wegerslev* and *Healy & Breen,* for appellees.

ALBERT, J.—The defendant Browne, for many years up to June, 1922, was president of the plaintiff bank. One Jens Peterson was a borrower, and in March, 1921, was indebted to the bank in the sum of $6,600, which at that time was collateraled with a land contract, which afterwards became worthless. Browne, to protect the interest of the bank, negotiated with Peterson for security, and proposed to Peterson that he make a deed to his land to the bank. Peterson was in straightened circumstances, owed some interest, approximately $300, on the incumbrances on his land, and had another obligation, amounting to approximately $500, which was crowding him. He proposed to Browne that, if Brown would advance him enough money to pay his interest and pay the $500 obligation, he, Peterson, would deed his land to the bank, to secure the then existing indebtedness, and also the $900 necessary to relieve the present pressure. The bank, being a national bank, was unable to loan this money to Peterson, because, by so doing, it would exceed the limit which it was allowed, under Federal law, to loan to any one individual. An agreement, however, was perfected between Browne and Peterson in the following manner. Browne drew a draft for $313.58, which was the amount of interest owed by Peterson, and forwarded the draft to the holders of the mortgage. To offset this, he made his personal note to the plaintiff

bank for that amount, and the same appeared in the assets of the bank. As to the $500 agreed upon, Peterson drew a sight draft on the plaintiff bank for that amount. Browne honored and paid the sight draft, and made his personal note to the bank for $510, which represented $500 in payment for the sight draft, and $10 cash then borrowed by Peterson. At the same time, he took from Peterson a note for $500, payable to Brown individually, covering the aforesaid loan of $500. This note was never turned over to the bank, and never appeared in its assets, and was always held by Brown as his personal property, until the trial of this lawsuit, when he brought it into court, and tendered it to the bank.

In June, 1922, differences arose between Browne and the directors of the bank, resulting in Browne's retirement as an officer of the bank. At that time, the bank held, in its assets, certain personal notes of Browne's, aside from the two made to take care of the Peterson matter. He was called upon to make adjustment and secure the same. There was also a note of $1,700 in the bank, made by one Hans Smith, which had been personally indorsed by Browne. The bank demanded that Browne secure his personal notes, the aforesaid $1,700 note of Smith, and the two notes growing out of the transaction with Peterson, by a mortgage on his home property. Browne utterly refused to secure the $1,700 note. He claimed, as to the $313 and the $500 notes, that they were not his personal obligations, and explained to the officers of the bank the transaction with Peterson, as hereinbefore related, and claimed that he was not liable therefor. However, after several conferences over the matter, Browne executed the note in suit herein, together with the mortgage securing the same, and delivered them to the bank.

The defendant, in answer to the petition of the plaintiff setting out substantially the above facts, pleads that there was a partial failure of consideration for the notes sued on herein, in the sum of $909, being the amount covered by the aforesaid two notes growing out of the Peterson transaction.

The evidence in the case is practically undisputed, and shows the above recited facts, in addition to the fact that the Peterson deed to the bank was duly recorded, and the land therein described was carried as a part of the assets of the bank.

One other fact which seems material to the consideration of this matter is that, at the time of the making of the mortgage and note sued on herein, the bank officials stated to the defendant Browne that, when the Peterson land was sold by the bank, this matter would be adjusted, and Browne's money returned to him; but, as no issue was made in the pleadings on this phase of the matter, and no plea of abatement was made, based thereon, we shall give it no further attention in the determination of the case, except as hereinafter provided.

It is quite apparent from the record that, at the time the mortgage and note in controversy were made, the bank was insisting that Browne was liable on all of these notes, including those growing out of the Peterson transaction, and Browne was insisting that he was not liable on the last named notes. This situation calls for application of a line of cases which have been consistently followed in this state since its early history, the substance of which is that, where there is a good-faith dispute or a doubtful claim between the parties, and a settlement is made between them by the execution of a new note, made fairly and in good faith, such settlement is a sufficient consideration for a compromise based thereon.

It is immaterial that a judicial investigation might demonstrate the claim to be unfounded in fact, if in fact the asserted claim is made in good faith. This doctrine is supported by the following cases: *Heffelfinger v. Hummel*, 90 Iowa 311; *Morey v. Laird*, 108 Iowa 670; *First St. Bank v. Williams*, 143 Iowa 177; *Cantonwine v. Bosch Brothers*, 148 Iowa 496; *Stuart v. White*, 191 Iowa 1312; *Urdangen v. Fryer*, 183 Iowa 39; *Graf v. Employers' L. A. Corpn.*, 190 Iowa 445.

In the *Morey* case, supra, we said:

"These claims were disputed by the defendant before and at the time the note was given, and if the defendant then knew all the material facts which affected the validity of the claim, and the settlement was fairly made, the note is valid, even though the claims for which it was given were of doubtful validity" (citing cases).

The law encourages voluntary settlement of doubts and disputes between parties; and, where all parties have the same knowledge or means of knowledge concerning the circumstances

involving their rights, the compromise so made must stand and be enforced, even though the results attained would have been different, had the controversy been brought before the court for decision. It is true that, in some events, the application of this rule may result in inequity, and may be harsh in its operation; but it is the best rule attainable, and, if it were not enforced by the courts, it would be a senseless thing for one to attempt to settle and compromise his differences with another. This is not only the rule in Iowa, but seems to be quite generally the rule in all our sister states. The cases on this proposition are gathered in 12 Corpus Juris 324, Section 17. An application of this rule to the facts before us leaves no doubt in our minds but that the defendant should fail in his defense made herein. There is nothing in the record to show that the claims made by the bank were not in good faith, with an honest belief on their part that they were entitled to recover from Browne on these two notes; and they were insisting that he settle the same. Browne, who had a full knowledge of all the facts of the case, on his part was insisting that he was not liable for the same. Out of this disagreement between these parties came the note and mortgage in controversy herein. We can see no reason why, under this rule, this settlement of the differences between the parties was not a good consideration for the making of the new note sued on herein. We reach this conclusion more readily in this case because the facts come wholly from the mouth of the defendant himself, and are undisputed; and we therefore hold that the court was in error in allowing the defendant to deduct the $909 from the amount for which judgment was entered in behalf of the plaintiff. Plaintiff should have had judgment for the full amount due under the mortgage and note.

As heretofore stated, the undisputed testimony shows that the deed was made by Peterson to the bank to secure all of the indebtedness, including the $909 in controversy herein. It is further undisputedly shown that, when the mortgage and note in controversy herein were made, the bank officers stated to Browne that, when the Peterson land was sold, the matter would be settled, and Browne's money would be returned to him. This evidence, however, was responsive to no issue in the case; and we are not to be understood as passing on the rights of Browne

as to the later agreement; and we leave at large whatever rights, if any, Browne has against the bank under this agreement, or may have against the defendant Peterson, as we do not wish to be understood as passing thereon.

The decree below will be modified in accordance with this opinion.—*Modified and affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.