JENS C. SMITH et al., Appellees, v. CHRIS T. SMITH, Appellant.

MAY 8, 1928.

REHEARING DENIED SEPTEMBER 28, 1928.

*J. A. Graham* and *Charles S. White*, for appellant.

*L. Dee Mallonee* and *A. B. Howland*, for appellees. .

KINDIG, J.—Jens C. Smith and Anna Salamon, the plaintiffs, are now appellees, and Chris T. Smith, the defendant, is the appellant. These parties are brothers and sister.

Controversy here originally grew out of the will executed by Maren Sophie Smith, mother of. the litigants. A review of the history leading up to this legal quarrel is of prime importance.

Tom Smith, the father of the three children named, died testate March 29, 1915. He was survived by. his widow, the said Maren Sophie Smith, and his children, appellant and ap-.pellees. In the father's will, 100 acres of land in Audubon County were. devised to his widow, Maren Sophie. Smith. That is the subject of this disagreement. By the same testament and by direct gift, the father had bestowed upon his children other property. After the death of Tom Smith, the mother lived with her son Chris T. Smith, the appellant, all of the time until her death. Part of this period they spent on land he had received from his father, and the remainder thereof in the town of Kimballton.

On the 25th of September, 1925, Maren Sophie Smith died testate. With the exception of a bequest of $5.00 each to appellees, she bequeathed and devised to appellant all of her earthly possessions, including the 100-acre farm formerly received from her husband. Soon after the mother's death, Jens C. Smith, the appellee, went to the home of the appellant, and complained about the uneven division of this estate. Approximately two weeks later, this same appellee communicated the fact to the appellant that, unless there was a more equal distribution of the assets, he would contest the mother's will. Appellant answered, "Go ahead."

Then, about the 20th of October of the same year, without notice to appellant, three men appeared at his home in behalf

of appellee Jens C. Smith. They were L. Dee Mallonee, an attorney, Rev. Jensen, a minister, and Dr. Soe, a physician. Maren Sophie Smith and appellant were members of Rev. Jensen's congregation, and Dr. Soe had been the family physician, although he had been discharged as such, a short time before the mother's death. The mission of these three gentlemen was to induce appellant to settle the alleged dispute concerning the mother's will, and make a more equal division of her holdings, both real and personal. As a result of these endeavors, appellant consented to make an adjustment, and the appellee Jens C. Smith was called for that purpose; whereupon the doctor and the minister left the scene.

When the appellee Jens C. Smith and appellant had conferred for a time, the latter consented to pay the former $7,000. Next in the order of events was an interview between Anna Salamon and appellant, wherein the arrangement was that she was to receive $4,500. Consideration for those named payments was the agreement on the part of the appellees to permit the probating of the mother's will without contest. So, at that time and place, the attorney, L. Dee Mallonee, prepared a written stipulation to that effect, which was duly signed by the three interested parties. Accordingly, what purported to be the last will and testament of Maren Sophie Smith was duly admitted to probate, as such; and afterwards, appellant consulted legal advice, and concluded that he had been wrongfully imposed upon, and was induced to make the agreement for the payment of $11,500' to appellees through fraud and misrepresentations. He offered to set aside the order admitting the instrument to probate, and refused to make payment of the stipulated sums to appellees. Consequently, this suit was brought against appellant, and the defense he interposed was fraud and lack of consideration. Due to the nature of the issues presented on this appeal, omission may here be made of the "consideration" phase of the question.

Principally, the falseness relied upon is assertions and statements made by the appellee Jens C. Smith and the lawyer, doctor, and minister representing him. Such deceptions, in substance, are that: First, the will of the mother, Maren Sophie Smith, was not fair to Jens and Anna, appellees, and that the property should be divided equally; second, if the will were

contested, the estate would have to be distributed share and share alike; third, a contest was then pending; fourth, things would come out about the lives of the father and mother that would humiliate appellant; and fifth, in case of court proceedings, the lawyers would get all the money, and appellant would save such expense by settling out of court. Those assertions, it is claimed, were false and untrue, and known by the authors to be such, and that the appellant, not knowing the falsity thereof, relied thereon, and was induced thereby to enter into a compact of settlement. Nevertheless, the trial court was of the opinion that there was no actionable fraud, and charged the jury accordingly to find and return a verdict for appellees, upon which separate judgments against appellant were entered, the one for $7,000 and the other for $4,500, in favor of Jens C. Smith and Anna Salamon, respectively.

Errors assigned for reversal will now receive our attention. But first, a review of applicable legal principles is essential for a solution of the problem.

I. Our courts uphold the friendly settlement of differences over property arising among heirs of deceased persons. *Adams v. Adams*, 70 Iowa 253; *Watrous v. Watrous*, 180 Iowa 884. See *In re Estate of Acken*, 144 Iowa 519. Manifestly, this may be accomplished by written agreement, if those interested are thus disposed, providing that in the inducement and procurement thereof there is no fraud or some other vitiating circumstance giving rise to invalidity. If the adjustment in the case at bar is to be ineffective, it must be because there was "fraud."

II. That destructive element consists, among other things, in the misrepresentation of an existing fact, or something equivalent thereto. It may also embody an assertion made as an opinion in a way and under such circumstances as to amount to the declaration of a fact. 26 Corpus Juris 1065, and 1079 to 1086, inclusive; *Johnson v. Chicago, R. I. & P. R. Co.*, 107 Iowa 1; *Owens v. Norwood-White Coal Co.*, 188 Iowa 1092; *Dimond v. Peace River L. & D. Co.*, 182 Iowa 400; *Barr v. Butler*, 197 Iowa 575; *Schwitters v. Des Moines Com. College*, 199 Iowa 1058.

III. However, simply the expression of a notion, belief, or "opinion" in itself does not amount to "fraud." 26 Corpus Juris 1131, Section 52; *Johnson v. Chicago, R. I. & P. R. Co.*, supra. See *Logsdon v. Moffitt* (Iowa), 159 N. W. 182 (not

officially reported); *Schwitters v. Des Moines Com. College*, supra.

IV. And furthermore, it is to be observed, in connection with the consideration of these principles, that an "opinion" interwoven with material facts may create a situation equal or amounting to actionable "fraud." *Dimond v. Peace River L. & D. Co.*, supra.

V. Added to the above and foregoing must be the further thought embraced within the doctrine that representations must be interpreted in accordance with their natural meaning, and as understood by the hearer; for the speaker is liable, not only for what he intended to convey, but also because of that which might reasonably be understood from the words uttered. 26 Corpus Juris 1098, Section 28.

VI. Of course, in the utilization of these legal theories, there must be available the necessary foundation to support the same, which consists of, first, a sufficient pleading, and second, the necessary proof; because "fraud" is not presumed, but must be established by sufficient evidence. *Stephenson & Peterson v. Svenson*, 187 Iowa 802; *Blasier v. Doyle*, 197 Iowa 652; *Wing v. Credit Guide Co.*, 181 Iowa 370; *Andrew v. Darrow Tr. & Sav. Bank*, 204 Iowa 870.

VII. Yet, assuming that those preliminary prerequisites have been met, it is still necessary to study a further essential. Reference is made to the dependence on the untruth, resulting in the innocent party's being prejudiced. Absence of such trust and confidence will prevent recovery. Hence, where one knows the truth, in spite of the falsity, there is no actionable "fraud;" and this is so even though there be misrepresentations, because in such event the person communicated to made no reliance on the message received. *Andrew v. Darrow Tr. & Sav. Bank*, supra.

VIII. Therefore, solution of the present controversy is to be made through the application of those legal principles to the facts presented in this record.

At the outset, it is certain that many of the expressions and remarks made by appellee Jens C. Smith, the minister, the doctor, and the lawyer were "beliefs" and "opinions" only, and did not amount to declarations of an existing fact. Within that category we are disposed to place them all, with one excep-

tion, which will be discussed later. This disposal of a large portion of the conversation complained of is in harmony with appellant's own version of the affair. He testified:

"I understood that, when Rev. Jensen was talking to me, that he was merely expressing his opinions and ideas about what would be the best thing for everybody concerned to do. He said something to me about avoiding litigation between members of the family, and I understood that it was his idea and opinion that he was giving me that it would be better for everybody concerned to get the matter settled up in a friendly way, without the necessity of having a row in court."

IX. Quite significant, however, is the fact that there is a clear difference and distinction between the pretenses above discussed and those reserved for further attention here. To obtain lucidation for the subject of our present thought, we will recall the circumstances bearing upon the situation.

The envoys, L. Dee Mallonee, Rev. Jensen, and Dr. Soe, were the agents of appellee Jens C. Smith, who secured their services in his behalf in order that appellant might be induced to make the desired division of the mother's estate. During the preliminary conversation with appellant at his home, the three men were at all times present, and actively or tacitly engaged in the talk which there took place. Before us is the task, not of determining the truth or falsity of the testimony of appellant concerning what was said or done at that conference, but rather, it is our duty to say whether or not there was basis in the record for the jury to find that the contract on which this suit is brought was procured by actionable "fraud." *Meyer & Bros. v. Houck*, 85 Iowa 319; *Snyder v. Guthrie*, 193 Iowa 624. See, also, *Inghram v. National Union*, 103 Iowa 395.

With that background in view, and within the contemplation of our purpose and duty as thus expressed, analysis will now be made of appellant's testimony. On the witness stand, he said:

"They [the lawyer, the preacher, and the doctor] told me they had come to see me about my mother's will, and that they did not think it was fair to Jens, and that it ought to be divided. They told me they did not think she was fair. They told me that the will of my mother was not fair to Jens and

Anna, and that it ought to be divided equally—the estate. They told me that they would contest the will if I did not divide with them. They told me about the contest. They told me that the lawyers would get all of it, and I would save the expense of a lawyer by settling out of court. Q. What was said there that time by Mallonee [the lawyer] or the others with reference to contesting the will, if anything was said? A. Well, he [the lawyer] said: 'If we contest the will it will have to be divided equally.' Rev. Jensen asked me if he should call Jens [appellee]. I said, 'Yes.' He went and called him. Q. Did Jens come? A. Yes, sir. Q. What was said to Jens when he came, if you recollect, by any of these parties in your presence? A. That he had agreed to settle. I asked him how he would settle. He claimed $7,200. I said I would see my attorney about that first. Jens told me I did not need an attorney, and I could save that expense. Q. Were you told by Rev. Jensen, Mr. Soe, or Mr. Mallonee the ground upon which the will might be contested, or that it was contemplated that it would be contested? A. Yes, sir, I think so. Q. Can you give us the words they used, as well as you can? A. They talked like she didn't have any business to will all of this property to me.''

Chris T. Smith, the appellant, was an ordinary farmer; he was not a lawyer, nor was he versed in the intricacies of that profession. L. Dee Mallonee was an attorney, and known to appellant to be such, and, in fact, was present in his professional capacity. Mr. Mallonee made the unqualified assertion, according to the evidence, that the contest which was contemplated would result in an equal division of the property. It is true that appellant knew there must be a reason for prohibiting the probating of the mother's will, but he thought there existed a sufficient ground therefor, which was, according to the testifier:

"They talked like she [testator] didn't have any business to will all this property to me."

Undoubtedly these representations were untrue, and known by the authors thereof to be such. Inequality in distribution alone is not enough to prevent or set aside the probating of a will. Mrs. Maren Sophie Smith had a perfect right to give

all her real and personal property to appellant if she chose, and if she did so, invalidity of her testamentary document would not result,—assuming, of course, that there was sufficient mental capacity on her part. Pronouncement was made by us to the following effect in *Owens v. Norwood-White Coal Co.*, supra:

"The physician who says that his patient is or is not afflicted with tuberculosis or with typhoid fever asserts a fact, and not a mere speculative opinion, and the lawyer who informs his client that a given act constitutes a public offense states an alleged fact, even though his statement is based upon his opinion as to the effect of a statute. Even the same language which under some circumstances would clearly be classed as an opinion merely, may, under other conditions, be substantive statements, on which, if the hearer rely to his injury, a right of action may be based. In this case, if the witnesses speak truthfully, Woodbridge [the attorney for the opposite party] dissuaded the plaintiff and wife from seeking independent counsel, telling them it was an unnecessary expense, and invited them to depend upon him and the defendant, and assured them that he spoke as a lawyer of experience, who knew the situation, and that they were without any remedy at law. * * * Woodbridge, in these statements, was not giving vent to a mere opinion; he was stating facts, or matters which he desired plaintiff to accept and act upon as facts, and * * *. It is only when the statements become, in legal effect, representations of fact, or the expression of opinion is insincere, and made with ulterior purpose to deceive or mislead the injured person, that they may be treated as fraudulent. Whether such is their quality and character in any given case cannot often be determined as a matter of law; but the answer to that inquiry, ordinarily at least, is to be deduced not alone from the words employed, but also from the circumstances attending and characterizing their use; and this, under all ordinary circumstances, is a jury question."

See, also, *Dimond v. Peace River L. & D. Co.*, supra.

Thus, in the case at bar, appellant, according to his own version of the interview, was misinformed concerning the outcome of the suggested will contest. Forsooth, appellees could not succeed in such undertaking unless they had a good and valid ground therefor which could be sustained by proper evi-

dence, duly and legally submitted to a court or jury, and under no circumstances would the mere inequality of division alone constitute a basis for holding for naught the testament under consideration. No doubt, had it not been for the attorney's statement, or the words of the others, given with his approval, to the effect that without settlement the lawyers would obtain all the property, appellant would have continued in his persistence to get unbiased legal advice. He was dissuaded, however, from so doing by the erroneous information regarding the expense, as well as the ill-founded statement about the outcome of the litigation.

Resultantly, appellant entered into a contract which, according to his testimony, will mean almost, if not entirely, a total loss to him; for the value of the estate, under the evidence offered, scarcely, if at all, exceeds the amount to be paid by appellant under the adjustment. Possibly appellant was mistaken concerning his interpretation, and also in his remembrance and revelation of the conversations referred to; but appellees have not seen fit to make correction thereof, and we are bound by the record submitted. Appellant believed those representations, as he understood them, relied thereon, and because thereof did act to his prejudice.

Wherefore, we are constrained to hold that, under the legal principles above enumerated, and the facts appearing in the record, there was a jury question, and it was within the province of that body, rather than the trial court, to say whether or not the disputed instrument was obtained through "fraud," so far as the appellee Jens C. Smith is affected. Especially is this true when weighed with the fact (at least a jury could find it to be such) that, throughout the adult life of these brothers, it seems that appellee Jens C. Smith succeeded in domineering over appellant in business transactions, because of the subserviency of the latter.

So, in directing the verdict, the district court committed reversible error.

X. Anna Salamon, the other appellee, stands in a different position. She committed no "fraud," nor was she the instigator of the actions or representations made by or through her brother, the appellee Jens C. Smith, or the three men, Mr. Mallonee, Rev. Jensen, and Dr. Soe, representing him. In fact,

she was entirely unaware of the negotiations, talks, and the resulting settlement had between appellant, the appellee Jens C. Smith, and his agents, until after full and complete consummation thereof, at which time appellant himself voluntarily approached her on the subject, attempting, while so doing, to keep secret the previous arrangement with his brother, Jens C. Smith, appellee. There no doubt was known to Mrs. Salamon, through her own discernment, some of the terms embraced within said former alleged compromise, but it is not certain that she knew all the details thereof. Evidence of "fraud," in all events, on the part of this one appellee is entirely lacking, and appellant's defense as to her wholly fails. Consequently, the district court was right in directing the jury to return a judgment for her.

The judgment of the district court in favor of the appellee Anna Salamon is affirmed, and that in behalf of the appellee Jens C. Smith is reversed.—*Affirmed in part; reversed in part.*

EVANS, FAVILLE, ALBERT, and WAGNER, JJ., concur.