J. W. ROUNDS, Appellee, v. LYDIA BUTLER, Appellant.

FEBRUARY 12, 1929.

*Miller, Kelly, Shuttleworth & McManus*, for appellant.

*Korf & Korf* and *John J. Ferguson*, for appellee.

ALBERT, C. J.—I. This action was on a promissory note for $187.50, commenced in justice court, and transferred to the district court of Jasper County. The defense was, no consideration, and fraud in the procurement of the note in the first instance; also, there was an attachment issued, and in a counterclaim, the defendant asked. damages for the wrongful suing out of the attachment. In effect, the court took the attachment case away from the jury, and, no exception being taken to the court's action in so doing, we give this question no further consideration.

The question before us is, therefore, whether or not, under the record made, the defendant should have been permitted to go to the jury on the matters pleaded in her answer. We are disposed to answer this question in the affirmative. We can, of course, express our opinion on the testimony no further than is necessary to answer the above question. The jury could have found the following facts, from the record made:

Harvey H. Rounds died testate on the 27th day of December, 1925. He left surviving him eight children, among whom

were the plaintiff and the defendant in this action. At or about the time the notice was given for the closing of his estate, the plaintiff, J. W. Rounds, with his brother, Steve Rounds, and their attorney, George B. Clark, appeared at the place where his sister, Lydia Butler, was residing, and demanded of her the execution of the note in controversy. They arrived at the house between 10 and 11 o'clock in the forenoon of January 10, 1927, and the conference lasted until 4 o'clock in the afternoon. It appears further that the original statement was that Lydia Butler had received about $3,000 from her father prior to his death, and it was demanded that she execute notes to the other heirs for their respective shares. The dispute finally settled down to a demand for a settlement based on the sum of $1,500. This $1,500 consisted of a government bond, in amount of $1,000, and a check for $500, executed by Harvey H. Rounds to Mrs. Butler, shortly prior to his death. Mrs. Butler insisted at all times that this bond and check were received by her from her father as gifts. The other parties disputed this proposition, and insisted that it was an advancement, and that she must account to the other heirs for their proportionate shares thereof. The executor of the estate at no time sought to have Mrs. Butler make such accounting to the estate. Passing the question,—if it be a question,—as to the right of these heirs to make such demand on Mrs. Butler, we pursue the evidence.

It was not only represented to Mrs. Butler that she was liable for an accounting of this money to the heirs, but she was threatened with litigation and prosecution; that the officers were looking for her; that she did not need to make any notes to two of the heirs, because they had not helped or assisted in pursuing her for a settlement of this claim; that, if she did not turn the money back into the estate, they would ''air her out in court.'' Plaintiff became angry at her because she would not settle, and there was loud talking. The pressure brought to bear upon her was such that she became disturbed, and cried a part of the time, and it lasted from their arrival in the morning until the notes were signed, about 4 o'clock in the afternoon, not even stopping for noonday lunch.

Defendant persisted in her denial of liability to the heirs, but at all times admitted that she received this bond and check, insisting that both were gifts from her father.

Such is the general trend of the testimony in the case.

After the notes were given, the plaintiff insisted that the defendant "hide herself, and not appear in court the next day" (which, we gather, was the day on which the estate was to be closed), and as his reason therefor, stated to her, in substance, that, if she were present in court "they might question you, get you on the stand, and you would give away something about this transaction. You better be in hiding today.". Further: "Just keep this to ourselves, and they won't find out anything about it."

The claim of the plaintiff is that this note was given as a compromise and settlement of a disputed claim between him and the defendant. This line of authority is well settled in this state. It is immaterial that on a trial it might be found that the claim was unfounded in fact, but if such claim is asserted in good faith, and without fraud, settlement must stand. We have lately elaborated this doctrine in the cases of *First Nat. Bank v. Browne*, 199 Iowa 981; *Smith v. Smith*, 206 Iowa 606.

There can be no question, under the evidence, that there was a disputed claim between these parties. The question then left is whether or not the claim made by the plaintiff was in good faith, or whether it was tainted with fraud, undue advantage, or duress. Whether such a claim is asserted in good faith is ordinarily a question for the jury. 12 Corpus Juris 333.

Under these rules, as applied to the facts in this case, we are disposed to, and do, hold that the evidence is such as to warrant its submission to the jury, and that it should have been so submitted, instead of directing a verdict for the plaintiff.

II. At the close of the defendant's testimony, both parties rested, and each made a motion for a directed verdict. The court sustained the plaintiff's motion, and overruled the defendant's. Since we hold that there was a jury question, the court should have overruled both motions for a directed verdict.

There are some assignments of error as to the admission or rejection of testimony, among which are a series of questions asked the defendant on direct examination, tending to develop the question of whether she was in any way indebted to the plaintiff, or owed him anything aside from the claim in controversy. The court sustained objections to this line of testimony, and we think it should have been admitted.

738

Also, defendant was asked as to statements made by Clark, the attorney, in her presence, relative to the experience of Clark's wife in a somewhat similar transaction. These statements being made by the attorney in her presence, they should have been admitted for what they were worth, as they may have had some influence upon defendant's action in the matter.

Aside from this, we do not find any error which deserves further consideration.—*Reversed.*

FAVILLE, DE GRAFF, MORLING, and WAGNER, JJ., concur.