MARTHA H. BOOTH, Appellee, v. W. A. JOHNSTON, Appellant.

No. 43701.

JUNE 15, 1937.

Cross & Hamill, for appellant.

Korf & Korf, for appellee.

SAGER, J.—On March 24, 1924, one Johns borrowed $5,000 of John Booth, giving his note for that amount as of that date. Johns and Booth were alone when the transaction was had. They are now both dead and the court was required to reach its conclusion without the help of their testimony.

The defendant Johnston had nothing to do with the original note until June 1927. At that time he found Johns in the bank alone. Johns threw the note spoken of, and out of which the one sued on herein arose, on the desk, asking defendant Johnston to sign it. Being assured that it would cost him nothing, the defendant-appellant placed his signature thereon. The defendant offered to prove that at the time he signed the note nothing was said to him about, nor did he know of, any arrangement or agreement made at the time the note was executed, or at any other time, that his (the defendant's) signature should be secured as one of the makers thereof. This offer was refused by the court and defendant complains, but in the light of what follows, find-

ing no error in the court's ruling in that regard, it will have no further attention.

At the time he signed the note defendant received no property or anything of value, nor promise of any kind; neither was there anything said about Johns giving any indemnifying agreement or security. About a year later Johns executed a note for $5,000, payable to defendant-appellant, which note provided:

"This note shall be void in case the maker pays the note for $5,000.00, held by John Booth, and signed by William A. Johnston as surety, or in case the maker hereof otherwise saves the payee hereof harmless from said obligation."

This note, secured by a second mortgage on Canadian land, was placed in Johnston's box in the bank by Johns, without, as defendant-appellant claims, his knowledge. It should be stated at this point that Johns was the president of the State Bank of Prairie City, Iowa, and that defendant, a farmer, was a director of the bank. Notwithstanding this claim, defendant knew that the note secured by the mortgage had been executed, and for a time asserted by his actions that it was his property, authorizing Buckley, the cashier of the bank, to look after the collection of rents from the land described in the mortgage. The record shows that the rentals were so small that nothing was actually realized thereon by defendant-appellant.

Following the incidents narrated, Booth, the payee in the note, died testate. His wife Martha, plaintiff herein, was his sole legatee, and she and her son John were named executors of the will. As such executors they took charge of the note and inventoried it as a part of the estate. In August 1931, John Booth, in his capacity as executor of the estate of his father met defendant-appellant and demanded that he execute a new note to replace the old one. They went into the bank, and after some discussion Exhibit A, upon which this suit is predicated, was drawn up and signed by defendant, payable to Martha Booth, widow and sole legatee, for the sum of $5,000. At the time the note was made computation showed that there had accrued on the original note up to that time approximately $1,300, which obligation was then cancelled. Defendant-appellant says he does not remember seeing the old note when he made the one in suit, and that nothing was said about cancelling it, and he did not, at that time or any other, receive the old

note. The testimony of defendant as to what took place is not entirely satisfactory, but he admits that when called on to give the new note he did not refuse to pay, but said: "I told them I couldn't do it at the time." His testimony continues to say that the boys (meaning the Booth sons, one of whom was the executor) agreed that they would throw off the interest, and agreed to take a new note for $5,000 in payment of the old, whereupon the note was signed. In answer to a question as to whether what has just been narrated was the agreement, the answer was "Yes." Further in his testimony defendant testified: "They agreed to throw off the interest," and that "they" (the Booths) agreed to take the new note in payment of the old note.

It appears from the record that the old note was brought from Booth's box in the bank by Buckley, the cashier, and he made the computation as to the amount then due. John Booth, upon the signing of the note in suit, forgave the debt so far as it related to interest. When the note thus signed was delivered, Booth left the old note on Buckley's desk, there having been written across it by the latter, "Renewal note," etc. Without any direction and without any authority so far as the record shows, Buckley, with what may be designated in the language of this court in other situations, "excess caution," put the old note in his private file, marked "Booth Estate," in the settlement of which he (Buckley) was taking a hand.

The diligence of able counsel who represent the parties herein has led them to the preparation of extensive briefs which point down numerous legal avenues we do not find it necessary to traverse. In fact, almost every proposition of law asserted by counsel on both sides could be admitted as being abstractly correct without determining the question before us. Stripped to its elementals, there are only two questions of importance before us, and those are: Was there consideration for the note in suit; and, if not, was there ratification of the note originally signed by defendant by his giving the new note on the cancellation of accrued interest? The trial court reached the affirmative on one or both of these questions, and we think it was right.

Code section 9484 provides:

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person

whose signature appears thereon to have become a party thereto for value.''

■■■ This, of itself, warranted the plaintiff's resting after having introduced the note in suit in evidence.

■■■ Whether or not the presumed consideration was lacking imposed a burden of proving it upon the defendant who asserted it, and in our view of the record defendant's proof failed in that regard. As will be seen from the facts hereinbefore recited, approximately $1,300 accrued on the old note was forgiven and the new note made to Mrs. Booth. We feel that the court was warranted in concluding, if it so found, that the transaction amounted substantially to the settlement of what was, or at least might have been in the light of defendant's present contention, a controverted matter. Since no fraud was claimed the case may be considered without stopping to inquire what the result might have been had it been pleaded.

In this view, the comment we made in Rounds v. Butler, 207 Iowa 735, at page 737, 223 N. W. 487, 488, fits the present situation:

''The claim of the plaintiff is that this note was given as a compromise and settlement of a disputed claim between him and the defendant. This line of authority is well settled in this state. It is immaterial that on a trial it might be found that the claim was unfounded in fact, but if such claim is asserted in good faith, and without fraud, settlement must stand. We have lately elaborated this doctrine in the cases of First Nat. Bank v. Browne, 199 Iowa 981, 203 N. W. 277; Smith v. Smith, 206 Iowa 606, 219 N. W. 512.''

An earlier case, First Nat. Bank v. Browne, 199 Iowa 981, at page 984, 203 N. W. 277, 278, announced the same doctrine in this language:

''It is immaterial that a judicial investigation might demonstrate the claim to be unfounded in fact, if in fact the asserted claim is made in good faith.'' (Citing cases.)

In addition to what has already been said, whatever knowledge or lack of it defendant-appellant had with reference to the incidents surrounding the inception of the original note, he voluntarily signed the note in suit, and whether it be called

ratification or waiver, his attitude toward the so-called indemnifying note and the mortgage on the Canadian land securing it, cast a direct light upon defendant's views with regard to the situation in which he had placed himself by signing the note involved herein. If he ever had the right to successfully plead want of consideration, as indeed he might have done under this record, he, for a sufficient consideration, undertook the obligation which he now seeks to escape.

There is something said of estoppel in the record, but we find none of the elements of estoppel in it.

Other complaints are made by defendant-appellant, and we have considered them all and find no error. We hold that the judgment of the trial court was right, and it is therefore, affirmed.—Affirmed.

Chief Justice and all Justices concur.