**WALTZ v. ELLINGHOUSE.**

**No. 13581.**

Circuit Court of Appeals, Eighth Circuit.

Jan. 16, 1948.

WOODROUGH, Circuit Judge, dissenting.

———◆———

John Paul Jones, of Des Moines, Iowa, for appellant.

W. B. Sloan and Herschel G. Langdon, both of Des Moines, Iowa (Schaetzle, Williams & Stewart, and Herrick, Sloan & Langdon, all of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

Earl H. Ellinghouse, of Des Moines, Iowa, died testate December 8, 1945, leaving an estate worth about $180,000. He was survived by Phyllis Ellinghouse, his wife, and by Beverly Fane Ellinghouse Waltz, his daughter by his divorced wife, Audrey Ellinghouse Kelly. By his will, dated July 6, 1942, the testator gave $1,000 to his daughter and the residue of the estate to his wife, who was named as executrix. The wife applied to the District Court of Polk County, Iowa, for admission of the will to probate. The daughter filed objections to its allowance. On January 14, 1946, the wife paid the daughter $10,000 for a release of all her claims and a withdrawal of her objections to the admission of the will to probate. The will was admitted to probate January 17, 1946, by the District Court of Polk County, Iowa, and the wife was appointed executrix. She had been appointed special "administrator" on January 3, 1946.

On July 13, 1946, the testator's daughter (appellant) brought this action against the executrix (appellee) to recover the full value of the estate, upon the claim that in 1934 the testator had contracted with his divorced wife to leave to the appellant his entire estate by will, and had breached the contract by making the will of July 6, 1942, in favor of his wife. Jurisdiction was based on diversity of citizenship. Among the various defenses asserted by appellee in her answer was the settlement and release of January 14, 1946. The case was tried to the District Court without a jury. The court, on January 24, 1947, made and entered the following findings of fact and conclusion of law:

"Findings of Fact.

"The Court finds:

"1. That in January, 1946, the Plaintiff [Beverly Fane Ellinghouse Waltz], personally and through her Counsel, for a consideration of Ten Thousand Dollars ($10,000.00) paid to her in cash, made a full, complete and final settlement of all her claims against the Estate of E. H. Ellinghouse and the Defendant [Phyllis Ellinghouse, Executrix of the Estate of E. H. Ellinghouse] in this action.

"2. The evidence shows no proof of any fraud, or mistake, or overreaching, or of any facts whatsoever, sufficient to invalidate said final settlement.

"Conclusion of Law.

"The Court finds:

"That all claims of the Plaintiff in this action have been fully and finally compromised, settled, satisfied and discharged, and plaintiff's complaint should be dismissed on the merits with judgment against her for costs."

A judgment of dismissal was thereupon entered, and this appeal followed.

■■ It is obvious from what has been said that the only question for review is whether the findings of the District Court are "clearly erroneous." The findings are not erroneous unless they are without an adequate evidentiary basis or were induced by an erroneous view of the law. The appellee, having prevailed in the trial court, is entitled to have the benefit of all favorable inferences which reasonably may

be drawn from the evidence. See Helvering v. Johnson, 8 Cir., 104 F.2d 140, 141, and cases cited.

Most of the facts out of which this controversy arose are not in substantial dispute. Appellant's parents were married at St. Paul, Minnesota, November 20, 1920, and she was born August 7, 1922. In July, 1927, her mother, Audrey Ellinghouse, brought an action in the District Court of Ramsey County, Minnesota, for a divorce, charging appellant's father with cruel and inhuman treatment. A decree was entered in the action February 14, 1928, granting to the mother (1) an absolute divorce, (2) custody of appellant, (3) judgment for $420, (4) $50 a month alimony, and (5) $40 a month for support of appellant "until said minor is eighteen (18) years of age, or until the further Order of this Court."

On November 1, 1934, appellant's parents stipulated for a modification of the divorce decree. Appellant's mother had remarried April 28, 1934. The father was living in Des Moines. He owed appellant's mother more than $7,000 for unpaid alimony and for support of the appellant. The stipulation of November 1, 1934, provided that, in consideration of $500 in cash to be paid by the "defendant [father] to the plaintiff [mother]," all past and future obligations for alimony were settled, and that, "for the same consideration and the further consideration hereinafter mentioned," all arrears in payments for the support and maintenance of their child (appellant) were settled, satisfied and discharged. The remainder of the stipulation reads as follows:

"For the consideration above mentioned which the defendant [Earl H. Ellinghouse] hereby declares to be valuable and wholly adequate, the defendant hereby stipulates and contracts that he will by his last will and testament bequeath and devise unto his said child, Beverly Fane Ellinghouse, all property of every kind and nature, whatsoever whereof he may be seized or to which he may be entitled at the time of his death. The defendant declares that he has already made a valid and effectual last will leaving all his property to his said child as aforesaid, and for the consideration stated agrees that such last will and testament shall continue in force and shall not be revoked as long as he lives.

"It Is Specifically Understood And Agreed that all other provisions in said decree contained, including the judgment for divorce, for the custody of said child, and the judgment for the support and maintenance of said child, from and after November 1, 1934, shall be and remain unaltered and in full force and effect the same as if this stipulation had never been made.

"This stipulation is made subject to the approval of the court; and it is agreed that when signed by the parties, they shall join in submitting the same to the court for its approval, and for the modification of said decree of February 14, 1928, in conformity therewith."

The stipulation was presented to the State court on November 14, 1934, and the court entered an order amending the original decree in conformity with the stipulation.[1]

On March 20, 1940, appellant's parents entered into another stipulation for a modification of the original divorce decree. This stipulation recited that appellant was seventeen and would be of age (eighteen) in August, and that the obligation of her father to support her would cease; that both parties to the divorce action had remarried; that appellant had been in her

---

[1] The last two paragraphs of the order read as follows:

"It Is Further Ordered, Adjudged and Decreed in conformity with the annexed stipulation that defendant [Earl H. Ellinghouse] shall by his last will and testament bequeath and devise unto his said child, Beverly Fane Ellinghouse, all property of every kind and nature whatsoever whereof he may be seized or to which he may be entitled at the time of his death; and the defendant having declared in said stipulation that his last will and testament, making valid and effectual disposition of all his property to his said child, as aforesaid, has already been made,

"It Is Ordered that defendant shall continue such last will and testament in force, and shall not revoke the same, or permit the same to be revoked as long as he lives; and that this and the preceding paragraph shall be added to the terms of said original decree of February 14, 1928, as now here amended."

mother's custody since February 14, 1928; that the father lived in Des Moines and the mother in St. Paul; that both desired to insure the future education and support of the child and to finally settle the obligations of both parties toward her. The remainder of the stipulation reads as follows:

"Now Therefore, It Is Stipulated And Agreed between the parties in consideration of the sum of three thousand nine hundred and twenty ($3920) dollars in hand paid by the defendant to the plaintiff upon the signing of these presents, that the said plaintiff [Audrey Ellinghouse] shall assume the future support, maintenance and education of said minor child without further obligation of any kind on the part of the defendant [Earl H. Ellinghouse], and that the obligation of the defendant as recited in the stipulation entered into between the parties dated November 1, 1934, and incorporated in the order of the Court dated November 14, 1934, wherein it was agreed and ordered

" 'That the defendant shall by his last will and testament bequeath and devise unto said child, Beverly Fane Ellinghouse all property of every kind and nature whatsoever, whereof he may be seized, or to which he may be entitled at the time of his death; and the defendant having declared in said stipulation that his last will and testament, making valid and effectual disposition of all his property to his said child, as aforesaid, has already been made, and that defendant shall continue such last will and testament in force, and shall not revoke the same, or permit the same to be revoked as long as he lives, and that said proposition shall be added to the terms of said original decree of February 14, 1928,' shall be vacated, set aside and rendered ineffectual, and that defendant shall be under no further obligation of any kind for the support, education or maintenance of said minor child, or under any further obligation of any kind to the plaintiff herein for any reason arising out of the marital relation heretofore existing between the parties."

On March 26, 1940, the State district court conformed the original divorce decree to the stipulation, vacated the provision requiring appellant's father to leave all of his property to her by will, and terminated his obligation in that regard.

On December 19, 1945, ten days after her father's death, appellant employed John S. McGrath, of St. Paul, Minnesota, as her attorney to file objections to the admission of her father's will to probate. McGrath retained Irving C. Christensen, another St. Paul lawyer, to assist him. Objections were filed on December 31, 1945, charging, in substance, that the decedent was incompetent to make a will and made it under the duress and undue influence of Phyllis Ellinghouse. McGrath and Christensen prepared further objections asserting that the stipulation and order of November 14, 1934, in the divorce proceeding, requiring the appellant's father to leave his property to her by will, was still in effect, and that the subsequent stipulation and order of March 26, 1940, were void because appellant's mother was induced to enter into the stipulation by fraudulent representations of her divorced husband as to his financial worth. These further objections McGrath and Christensen took to Des Moines, Iowa, and filed on January 9, 1946. They then went to the office of Arnold F. Schaetzle, who was the attorney for Phyllis Ellinghouse and for Phyllis Ellinghouse, special administratrix.

The situation, as it appeared to McGrath and Christensen, at the time of their visit to Schaetzle and their negotiations with him leading up to the settlement of appellant's claims against Phyllis Ellinghouse and the estate of the decedent, are clearly stated in the testimony of Irving C. Christensen, which is in substantial accord with the testimony of John R. McGrath. Because of appellant's insistence that she and her former counsel were overreached and misled into bartering away her vested right to her father's entire estate for a grossly inadequate price, we have set out in the margin the entire cross-examination and redirect examination of Irving C. Christensen [2]

---

[2] "Cross-Examination.
"[The testimony was evidently taken by deposition at St. Paul, Minnesota.]

"By Mr. Langdon [attorney for defendant]:
"I [Irving C. Christensen] am a mem-

(omitting objections of counsel and rulings of the court).

The substance of appellant's testimony was that in accepting $10,000 in settlement of her claim, she acted on the advice of her attorney, McGrath; that he told her the value of the estate would be between fifty and sixty thousand dollars and that the 1940 order in the divorce proceedings would have to be set aside if her rights under the 1934 stipulation were to be restored. She testified that she would not have made the settlement had she known the true value of her father's estate or that

ber of the bar of the state of Minnesota. I was admitted to practice in September 1932 and since November of 1932 have been engaged continuously in the practice of law in the city of St. Paul. I was associated with Mr. McGrath in connection with the claim of the plaintiff, Beverly E. Waltz. At the time I prepared the original objections appearing in Exhibit 1 which were filed to the probate of the will I don't know whether or not I had a copy of the will in my possession. I knew that Mr. Ellinghouse had died just a few days before and that a will had been filed in Polk County giving his daughter $1,000.00 and leaving the remainder of the estate to his widow, Phyllis Ellinghouse. I knew that except for the $1,000.00 bequest to Beverly Waltz, Phyllis Ellinghouse was the sole beneficiary under the terms of the will. I later prepared with Mr. McGrath the Further Objections to the Will which appear in Exhibit 1. These Further Objections refer to the 1934 stipulation and decree and to the 1940 stipulation and decree which are a part of the record in the case of Ellinghouse vs. Ellinghouse here in the District Court at St. Paul.

"Q. You had made prior to making your trip to Des Moines had you not, an investigation of the law with reference to the validity of the 1940 stipulation and decree to which we have just referred? A. Yes.

"Q. It was your opinion from your investigation of the law that the 1940 stipulation and decree entered here in your court in St. Paul was a valid and binding stipulation and decree, was it not? A. Well, it was my opinion that it was binding until such a time as it could be set aside, if it could be set aside.

"It was my opinion that before I could proceed to assert any rights of Beverly Waltz under the prior stipulation and decree of 1934, that it would be necessary to set aside the 1940 stipulation and decree, as far as those particular objections were concerned that we made. That was my conclusion from my investigation of the law.

"I think we arrived in Des Moines late in the day and it was the following day that we went to Mr. Schaetzle's office. At that time Mr. McGrath and I advised

him that we had filed these Further Objections which appear in Exhibit 1. In this first conference with Mr. Schaetzle I informed him about the 1934 stipulation and decree and also about the 1940 stipulation and decree which are of record here in St. Paul in our Court. Copies of them have been identified here as Exhibits 3 and 4. In approaching Mr. Schaetzle with a view to possible settlement of the claim we advised him of the two decrees and stipulations. However we based our claim upon the further objections that we had previously filed which included the allegations of mental incompetence and undue influence. We mentioned all of those things to Mr. Schaetzle when we were discussing with him our demand for settlement, if we could get one. I believe we first talked with Mr. Schaetzle and asked a percentage of 25% of the estate. Mr. Schaetzle told me and Mr. McGrath, I believe, that he was not interested in discussing settlement based upon any percentage of the value of the estate. I believe he made an earlier offer than the one we finally accepted. I believe it was $5,000.00, if I remember right. Mr. Schaetzle finally told us that Mrs. Ellinghouse would pay $9,000.00 in addition to the $1,000.00 specified in the will, or a total of $10,000.00 for a full and complete settlement and release. I believe I was present when Mr. McGrath communicated that offer to our client on the telephone. Mr. McGrath and I later accepted Mr. Schaetzle's offer as I stated here. Mr. Schaetzle told me and Mr. McGrath that he did not know in dollars what the value of the estate would be.

"Q. And it is true, is it not, that it was your opinion that the size of the estate did not affect the value of your claim for settlement purposes? A. Well, I had in mind the fact that there was a substantial estate to deal with and we did have a big job ahead of us in order to put us in a position where we would prevail.

"Q. But outside of knowing, which you did know, as you say, that it was a substantial estate, the exact value of the estate did not in your opinion affect the value of your claim, isn't that true? A. Possibly not. I might qualify that: If it were some vast sum, of

her legal rights were such as she now asserts them to be.

■ ■ We find nothing in the record in this case which would justify this Court in ruling that the determination of the trial court that appellant settled all of her claims against appellee is erroneous. Where it is asserted that a compromise of a disputed claim is invalid, the burden of establishing its invalidity is upon the party making the assertion. Mason v. United States, 17 Wall. 67, 74, 21 L.Ed. 564; General Discount Corp. v. Schram, D.C.E.D.Mich., 47 F.Supp. 845, 849; Clark v. Barlow, 74 App. D.C. 328, 122 F.2d 337, 341. The trial court found that the evidence failed to show any fraud or overreaching or any such mistake as would affect the validity of the settlement.

Whether the validity of the settlement is to be tested by the law of Iowa, where the settlement was agreed to, or by the law of Minnesota, where the appellant received the $10,000 and executed the formal documents evidencing the extinguishment of her claims, is not important. The applica-

---

course, it probably would have made some difference.

"Q. But a difference of between $100,-000.00 or $200,000.00 wouldn't have changed your opinion as to the value of your client's claim in the slightest, would it? A. I don't believe so.

"During our conversation with Mr. Schaetzle he did show us what papers he had in his file in front of him on his desk relating to the assets of the estate. Mr. McGrath and I examined those papers. Mr. Schaetzle did tell us he thought the estate would be of a value in excess of $100,000.00 but he didn't know what its value ultimately would turn out to be. He said he didn't know what property might have been in joint tenancy and what may not have been. He did mention something about horses or some other items that were difficult to value, and that that would make a difference. I believe Mr. Schaetzle mentioned something about some farms also. My recollection is pretty hazy on that, but it seems that there was something mentioned about it. Mr. Schaetzle did say in substance that he didn't know then, and it would be some time before he would know, definitely what the value of the estate would be.

"Q. So far as the validity of the 1940 stipulation and decree here in the District Court in St. Paul, Mr. Christensen, and your opinion with reference to that and with reference to the necessity of setting it aside before you could proceed on a claim based on the '34 stipulation and decree, your opinion with reference to that 1940 stipulation and decree is still the same now as it was at the time you made this settlement, is it not?

"A. It still is the same.

"I do have now and have had for a good many years as much probate business as the average. The statement as to the time of trial kind of jarred me

a little bit but I figured I could stall my way through and we wouldn't be forced to trial too early, because I figured in my own mind that they had to prepare as well as I did.

"Q. You felt at the time that you made this settlement, Mr. Christensen, and you still feel, do you not, that it was a good settlement and an advantageous one for your client, taking into account the facts and your investigation of the law with reference to the stipulations and decrees here in Minnesota? A. Yes."

"Redirect Examination.

"By Mr. Jones [attorney for plaintiff]:

"[Irving C. Christensen:]

"It was my opinion that in order to urge any rights down there, I would have to enter the Court up here in an attempt to set aside the proceedings in 1940.

"Q. Now, as to the representations as to the possible gross value of this estate, did you at any time have the understanding from your conversation with Mr. Schaetzle that the estate would be substantially in excess of $100,000.00?

"A. The only statement made was that it probably would run $100,000.00. How much over, nothing was ever said one way or the other.

"I believe my opinion was that it probably might have run somewhere between one hundred and one hundred and a quarter, something like that. I believe I would say that had I known that the estate was worth $200,000 I still would have felt that $10,000.00 was a good settlement. I believe I would have come to the same conclusion had I known that it was worth approximately $200,000.00 because I didn't particularly consider it at the time. I considered only the fact that there was a substantial estate there and the nature of the claim which I had to work on."

ble law in each of these states is, in substance, the same and is in conformity with the pertinent general law.

Hennessy v. Bacon, 137 U.S. 78, 85, 11 S.Ct. 17, 19, 34 L.Ed. 605, a leading case on the subject, has this to say of a somewhat similar situation: " * * * With full knowledge of the title that Rogers had acquired, Hennessy deliberately chose to compromise the dispute between them, as shown by the agreement of 1886, and by the deeds executed in pursuance of its provisions. No fraud was practiced by Rogers. He was guilty of no unfairness. He concealed nothing that he was under legal obligation to state. His information in respect to the title was no greater than Hennessy had, or than Hennessy could easily have, obtained. It is the case of the compromise of a disputed claim, the parties dealing with each other upon terms of perfect equality, holding no relations of trust or confidence to each other, and each having knowledge, or having the opportunity to acquire knowledge, of every fact bearing upon the question of the validity of their respective claims. Cleaveland v. Richardson, 132 U.S. 318, 329, 10 S.Ct. 100 [33 L.Ed. 384]. Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained." See, also, Clark v. Barlow, 74 App.D.C. 328, 122 F.2d 337, 340, 341.

The attitude of the Supreme Court of Iowa toward the compromise of disputed claims is stated in First National Bank of Alta v. Browne, 199 Iowa 981, 984, 985, 203 N.W. 277, 279, as follows: "The law encourages voluntary settlement of doubts and disputes between parties, and where all parties have the same knowledge or means of knowledge concerning the circumstances involving their rights, the compromise so made must stand and be enforced even though the results attained would have been different had the controversy been brought before the court for decision. It is true that in some events the application of this rule may result in inequity and may be harsh in its operation, but it is the best rule attainable, and if it were not enforced by the courts it would be a senseless thing for one to attempt to settle and compromise their differences with another. This is not only the rule in Iowa, but seems to be quite generally the rule in all our sister states." See, also, the cases of Hoyt v. Wickham, 8 Cir., 25 F.2d 777, 781, and Carney v. City of Grinnell, Iowa, 8 Cir., 53 F.2d 44, 46, 47, in which compromises of Iowa disputes were involved.

The law of Minnesota relative to the settlement of disputed claims was established at an early date. Justice Mitchell, of the Supreme Court of that state, in the case of Perkins v. Frinka, 30 Minn. 241, 242, 243, 15 N.W. 115, 116 (a suit upon a promissory note given to settle a disputed claim to land based upon a tax title which later proved to be void) said:

" * * * There is no evidence that plaintiff then knew or believed that his tax deed was void. It is also evident that the settlement was made, not upon the basis that plaintiff had unquestionable title, but that his claim was doubtful, because the land was worth about $4,000, and the amount to be paid was only $325. Hence, all there is of the case is that plaintiff had brought ejectment, claiming title under a tax deed which he asserted was valid, but which defendant had asserted was void. The question was one of doubt, and defendant concluded to pay the $325 rather than run any risk of losing his whole farm. Possibly he did so too hastily and without taking proper counsel. But this is his own fault. It may be also true that the parties did not stand upon an equal footing in point of intelligence and business experience. But this of itself is no defense, as long as defendant possessed the legal capacity to make a contract.

"Possibly, tested by the highest standard of morality, which is perfection, plaintiff exacted more than was in accordance with the golden rule; but this the law cannot consider, unless some legal duty has been violated. Neither is it any defense that it was afterwards judicially determined that tax deeds of this form are void. Where parties whose rights are questionable and doubtful, and who have equal means of ascertaining what their rights are, come together and settle these rights among themselves, a court must enforce the agreement

to which they may fairly come at the time, although a judicial decision should afterwards be made showing that these rights were different from what they supposed them to be, or showing that one of them really had no rights at all; and so nothing to forego."

In De Mars v. Musser-Sauntry Land, L. & M. Co., 37 Minn. 418, 419, 35 N.W. 1, Justice Mitchell said: "The defendant is entirely right in his law that the compromise of a disputed or doubtful claim is in itself a good consideration, and that no investigation into the character or value of the claims submitted will be gone into for the purpose of setting aside a compromise honestly made. It is sufficient if the parties entering into it thought at the time that there was a question between them. It is not even necessary that the question in dispute should be really doubtful, if the parties bona fide considered it so. The real consideration which each party receives under a compromise is not the sacrifice of the right, but the settlement of the dispute. But, on the other hand, it is equally true that to constitute a good consideration for a settlement by way of compromise there must have been an actual bona fide difference or dispute between the parties as to their rights."

Appellant infers that Schaetzle, as attorney for Phyllis Ellinghouse and the estate of E. H. Ellinghouse, knew more about the value of the estate on January 9, 1946, than he disclosed to McGrath and Christensen, and that he must have been guilty of fraudulent concealment of facts which it was his duty to disclose to them. This inference is without any adequate evidentiary basis, and is one of those unfavorable inferences in which this court cannot indulge on review. It fairly may be inferred that McGrath and Christensen were primarily interested in finding out from Schaetzle how much could be obtained by him for their client in compromise of her claim. They were confronted with having to decide, with reasonable promptness, whether she should settle or fight.

Appellant, in effect, argues that because, in settling her claim, she acted upon a misconception of its legal status, and because appellee was, concededly, laboring under the same misconception as to appellant's rights, there was a mutual mistake which nullifies the settlement. There is no merit in this contention. Appellant knew all of the facts which conditioned the legality of whatever claim she may have had. If she and her Minnesota counsel were mistaken as to the validity of her claim (a matter about which we express no opinion), the mistake was purely one of law. One cannot transmute a valid compromise into an invalid one by merely changing lawyers or legal theories.

The District Court was entirely justified in finding, as it did, that appellant had settled whatever claim she may have had against the appellee.

The judgment appealed from is affirmed.

WOODROUGH, Circuit Judge (dissenting).

I am not convinced that the validity of the controverted release of all interest in her father's estate executed by his only child in this case has been sustained on the right legal principles. The settlement and release was negotiated by the attorney for the executrix in possession of the estate and occupying a fiduciary relationship which precluded dealing with the daughter for her claimed interest in the estate except upon full disclosure to her of what the estate was. He had the knowledge or the means of knowing, and the duty under the law to inform himself, and the daughter had no information or means of finding out except through him. Her proof that she acted in the belief, derived from the attorney acting for the executrix, that the estate was of the value of fifty or sixty thousand dollars, whereas it was more nearly two hundred thousand dollars, put the burden of proving that full disclosure had been made to her in the dealing for the release squarely on the executrix. As the executrix did not offer any testimony to sustain that burden, the finding of the court that "the evidence [meaning plaintiff's evidence] shows no proof of any fraud, etc." did not respond to the issue. Without a finding that the executrix had made the disclosure the law required of the fiduciary in the dealing with the daughter, the daughter's action should not be held to be

barred by the release. The contention that the misinformation given by the executrix as to the amount and value of the estate was not a material factor in the dealing for the release seems to me contrary to the law requiring disclosure to be made by fiduciaries who claim under contracts negotiated by them with beneficiaries of their trusts.