WALNUT STATE BANK, Appellee, v. GOTTLIEB D. MUELLER et al., Appellants.

**BILLS AND NOTES:** Fraud—Right to Rescind—Waiver. The victim
1   of a fraud-induced promissory note irrevocably waives his right to rescind the transaction out of which the note arose, by executing a renewal of the note with knowledge of the fraud.

**BILLS AND NOTES:** Holdership in Due Course—When not in Issue.
2   The holdership in due course of a negotiable promissory note is not

put in issue by testimony that a former note *of which the note sued on was a renewal* was obtained by fraud.

Headnote 1:   8 C. J. p. 781.   Headnote 2:   8 C. J. p. 787.

Headnote 1:   3 R. C. L. 1106.

*Appeal from Shelby District Court.*—W. C. RATCLIFF, Judge.

DECEMBER 14, 1926.

Suit in equity for foreclosure of a real estate mortgage. A partial defense was pleaded. This was that a certain note for the principal sum of $7,500, which formed a part of the mortgage debt, was obtained from the defendant by fraud. Tender of the return of the consideration was made in the pleading, and a rescission of the contract and cancellation of the note were prayed. Decree went for the plaintiff for the full amount claimed, and the defendant has appealed.—*Affirmed.*

*V. H. Byers, While & White,* and *Tinley, Mitchell, Ross & Mitchell,* for appellants.

*George S. Wright* and *A. G. Kistle,* for appellee.

EVANS, J.—The note and mortgage sued on bore date April 24, 1923. The original fraud upon which the partial defense was predicated, was perpetrated in October, 1920. It was not perpetrated by the plaintiff. The defendant contends, however, that the officials of the plaintiff were charged with knowledge thereof, and that it was of such character as to vitiate the note and mortgage executed April 24, 1923.

1. BILLS AND NOTES: fraud: right to rescind: waiver.

In order to get the background of the defense pleaded, we must needs go back to October, 1920. Prior to that time, one Ronna had owned and operated a private bank, under the name "American Bank," in the town of Walnut. Associated with him was one Koll, either as a party in interest or as an employee. Sometime prior to October, 1920, Ronna conceived the idea of organizing a state bank, for the purpose of taking over the business of his private bank, and he proceeded to carry out such plan. The new bank was to be known as the American State

Bank. The proposed capital was fixed at $100,000, divided into shares of $100 each. Many of these shares were sold to unsuspecting purchasers at $300 each. These sales were induced by representations that the stock would be worth such price; and would pay good dividends thereon. The implication of such representations was that the assets to be taken over by such proposed new bank from the private bank would be sufficient to give such value to its stock. The defendant Mueller was induced by such representations and others to subscribe for 25 shares of stock, and to execute his note for $7,500 in payment therefor. The representations in his case were made by Koll. The $7,500 note was made payable to Ronna. The plaintiff offered no testimony in denial of the original fraud. For the purpose of our consideration, it must be assumed that a gross fraud was perpetrated at that time by Koll and Ronna upon this defendant. By reason thereof, Mueller became entitled to prosecute an action for damages against both of them, or, at his election, to rescind the contract of purchase and to recover his note, or the value thereof. The defense of fraud now interposed by this defendant is met by the plaintiff with the claim that the defendant has repeatedly ratified and confirmed the contract which he signed, by repeated renewals of his notes representing such indebtedness, not only to Ronna, but later to the American State Bank, and still later to the plaintiff itself. The first note executed by defendant became due in one year from date. Upon its due date, in October, 1921, it was presented to him by Ronna for payment. He executed a new note in renewal thereof, payable to Ronna. Ronna indorsed this note to the American State Bank, of which Ronna was president. This note became due in October, 1922. Upon such due date, the defendant renewed it again, by the execution of a new note, not to Ronna, but to the American State Bank. The American State Bank at that time surrendered to him the note falling due, which carried the indorsement of Ronna. The American State Bank was already in financial straits. On or about April 24, 1923, one Fuller, from the state banking department, was engaged in investigating the condition of the bank, and, in an effort to put its affairs in such a condition as to command the confidence of the banking department, he demanded that security be given by debtors for their unsecured notes. Among others, he called for the defendant

herein, and had a conference with him. He offered, on behalf of the bank, that the interest rate should be reduced from 8 per cent to 7 per cent, in consideration of security to be given. To this the defendant assented. The defendant was owing such bank more than $25,000, including the note in question. He so listed his indebtedness, to Fuller. For the purpose of securing the same, he executed two mortgages upon different parcels of real estate, for $16,000 and $9,000, respectively, and gave notes for like amounts. The $7,500 note given in October, 1922, had been previously negotiated to the war finance corporation of the Federal government, and was held by such corporation at that time. It was agreed, however, that it should be procured, and surrendered to the defendant. Some months later, it was surrendered to him, and accepted by him. The note of April 24, 1923, became thereby the only evidence of such indebtedness held against the defendant. This note also was negotiated to the war finance corporation, and was held by such corporation at the time of the closing of the doors of the American State Bank, on May 23, 1923.

In September, 1923, the Walnut State Bank, plaintiff herein, was organized. It purchased much of the paper held by the failed bank, and in consideration therefor assumed 45 per cent of its deposits and all its bills payable,—these latter being secured by collateral. It took from the war finance corporation the defendant's paper, including the $7,500 note. It paid full value therefor to such corporation. The defendant pleaded that he had attempted or offered to rescind the contract, in a conversation with Ronna in the spring of 1922, and that Ronna had refused his offer. At no other time, and to no other person, had he repudiated the transaction as being fraudulent, nor had he claimed to any officer of the corporation that the transaction was fraudulent, until November, 1924. On that date, he claims to have told Nichols, vice president of the plaintiff bank, that he was defrauded in the sale of the stock. Except for his conversation with Ronna in the spring of 1922, his first offer of rescission was contained in the third amendment to his answer, filed on January 17, 1925.

The foregoing are the salient facts upon which the plaintiff predicates the contention that the defendant had repeatedly confirmed and ratified the transaction complained of, and had fully

waived his right of rescission. Of course, he did not thereby waive his right to claim damages against the perpetrators of the fraud, and perhaps to claim an offset by way of damages, as against a subsequent holder not in due course. But the defense is not predicated upon damages or right of offset; it is predicated squarely upon the right of rescission. It will be noted that the claimed rescission in the spring of 1922 can avail nothing to the defendant, as against renewal notes subsequently executed. It is contended for defendant that some of his renewals were made before he was cognizant of the fraud, and that some of the subsequent renewals were fraudulently obtained from him. This contention is predicated in part upon the fact that Ronna, being himself cognizant of the fraud, was president of the American State Bank when one or more of the renewals were made. When the plaintiff sought rescission from Ronna in the spring of 1922, he had the right of election whether to insist upon a repudiation of the transaction or to confirm it. His giving of a new note was an act of confirmation, and the taking of the same, even by Ronna, did not constitute a new fraud, even though the first note had been obtained by fraud. The trial court held that he fully confirmed the transaction. We see no escape from this conclusion, upon the record. If he did confirm the same, he necessarily waived the right of rescission. In such case, the question whether the plaintiff was a holder in due course is not necessarily material. We have repeatedly passed upon this question. *Euclid Ave. St. Bank v. Nesbit,* 201 Iowa 506; *Home Sav. Bank v. Heizer,* 200 Iowa 793; *National Bank of Decorah v. Robison,* 199 Iowa 1044; *Farmers & Merch. Sav. Bank v. Jones,* 196 Iowa 1071; *State Sav. Bank v. Deal,* 200 Iowa 490.

It cannot be found, upon this record, that the defendant was not cognizant of the alleged fraud on April 24, 1923.

We may say further that, even though the case turned on the question whether the plaintiff was a holder in due course, the defense would still fail. This is so because the defendant did not
2. BILLS AND NOTES: holdership in due course: when not in issue. show that the notes and mortgages of April 24, 1923, were obtained from him by fraud. He failed, therefore, to cast upon any transferee of the note the burden of showing that he was an innocent holder in due course. The fact that the original note

in 1920 was obtained by fraud could not, of itself, be effective to cast the burden of proof upon a transferee of the note of April 24, 1923. The situation presented, then, is that the war finance corporation was presumptively a holder in due course. The Walnut State Bank, having taken the note for full value from such corporation, thereby holds as good a title as the war finance corporation itself had. And this would be no less so, even though some of the officers of the Walnut State Bank were officers of the American State Bank, and knew of the original fraud. We are not unmindful of the great hardship which the defendant has suffered through the original fraud perpetrated upon him. But to permit him to prevail herein would work no less a wrong upon an innocent party than he himself suffered in the first instance.

We think that the decree entered below was unavoidable, and it is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.