JOHN C. BACON et al., Appellees, v. FIRST NATIONAL BANK OF DYERSVILLE, Appellant.

**BILLS AND NOTES:** Validity—Renewal of Forged Note—Effect. The execution of a promissory note in renewal of a known forged note necessarily works a waiver of the fraud consequent on the forgery. Evidence held sufficient to establish the absence of such knowledge.

Headnote 1:   8 C. J. pp: 445, 1045.

Headnote 1:   23 L. R. A. (N. S.) 1234; 35 A. L. R. 1280; 41 A. L. R. 964; 3 R. C. L. 1106.

*Appeal from Clayton District Court.*—C. H. KELLEY, Judge.

NOVEMBER 22, 1927.

Action to cancel and set aside a promissory note and a real estate mortgage and a chattel mortgage securing the same. The court granted the relief prayed, and the defendant appeals.— *Affirmed.*

*A. M. Cloud, George S. Banta,* and *E. H. Estey,* for appellant.

*M. X. Geske* and *V. T. Price,* for appellees.

FAVILLE, J.—The appellees John C. and Ruby Bacon are husband and wife, and reside upon a farm in Clayton County. For a number of years, they had dealings with one D. J. Murphy, a lawyer and speculator residing at Waukon. Murphy was their confidential adviser. He negotiated the purchase of a farm, which, in time, was sold at a profit, and another farm purchased by the appellees, with the assistance of Murphy. They lived upon the last-mentioned farm. About September 25, 1919, the appellant bank purchased from said Murphy a note purporting to have been executed by the appellee J. C. Bacon, in the principal sum of $3,000. Said note was renewed twice by notes sent by Murphy to the appellant bank, purporting to bear the signature of Bacon. The last of said renewals was a note dated September 23, 1921, and due in one year. It was made payable to Murphy, and was indorsed and guaranteed by him. Prior to the transactions involved in this case, the appellant bank did not notify the appellees of its ownership of said note, or make any demand for the interest or the principal due thereon. On or about May 1, 1924, Murphy telephoned to the appellees that he wished to see them. They called at his office, and, according to their testimony, were informed by Murphy that the Dyersville bank held an obligation which he

had incurred for them, and that the representatives of the bank would be out to the farm to see them, the next day. They contend that he also said something about getting a loan on their farm, to pay off the first mortgage that was then on the premises. On the 2d day of May, 1924, the cashier of the appellant bank, the attorney of the bank, Murphy, and his son, went to the Bacon farm. All of the parties except Murphy, who was unable to be a witness, testified regarding what took place on the farm at that time. The evidence is in direct conflict. It is the contention of the appellees that at said time Murphy stated to them that he had incurred indebtedness for them to the appellant bank, and that the amount of such indebtedness, with interest, was more than $3,500. Briefly stated, the appellees contend that they made violent protest and objection to the claim that any such amount of indebtedness had been incurred by or for them, or that they were liable therefor. During the negotiations, Murphy called the appellees outside of the room where the other parties were, and had a private talk with them; and it is the contention of the appellees that he persuaded them to sign the note in question, and assured them that it was all right for them to do so. Appellees insist that the note then held by the bank was not presented to them during the transaction; that they did not see it at the time, and had no opportunity to examine the signature thereto. Appellees signed a new note for $3,547.75, payable to appellant. At the same time, the appellees also executed a chattel mortgage upon personal property and a second mortgage upon their farm, to secure the note. The younger Murphy was a notary public, and, since he was unauthorized to take acknowledgments in Clayton County, the appellees accompanied him and the bank's attorney across the county line into Allamakee County, where the notarial seal was attached to the instruments.

It is the contention of the appellees that the signatures to the said two mortgages were obtained by fraudulent concealment, and that they did not know they were signing mortgages, and did not learn until long afterward that the instruments were, in fact, mortgages on real and personal property. The deed to the farm was produced by Murphy at the time, and was turned over to the attorney for the bank, who took it, and had it recorded. At the time, Murphy turned over to the appellees

a number of notes. It is the contention of the appellees that, later in the day, the young daughter of the appellees found some scraps of paper on the floor in the house where the parties had been, and picked them up and gave them to her mother. Among these was the original note which it was claimed had been given by appellees, and for which a new note was given in renewal. Mrs. Bacon testifies that she did not examine the note at the time, and in the evening, called her husband's attention to it, and he did not examine it; but that it was laid away with other papers, and that it was not examined until the following October, about the time this action was commenced. The deed and mortgage were recorded by appellant's attorney.

In October following, the representatives of the bank called at the home of the appellees, and suggested that a sale of personal property be had, to pay off said note. Thereupon, the appellees immediately consulted an attorney, and this action was promptly instituted.

We think it is clearly established that the original note held by the Dyersville bank was a forgery, and that the appellees not only did not execute it, but that they never received any consideration therefor.

The fighting point of this lawsuit is with regard to the transaction on the Bacon farm on May 2, 1924, when the new note and the mortgages were executed. If the appellees executed the new note in renewal of the original note with knowledge that the said original note was a forgery, then such renewal would be a waiver of the fraud, and the appellees would be bound thereby. *First State Bank v. Williams,* 143 Iowa 177; *Farmers & Merch. Sav. Bank v. Jones,* 196 Iowa 1071; *State Sav. Bank v. Deal,* 200 Iowa 490; *Euclid Avenue State Bank v. Nesbit,* 201 Iowa 506; *Home Sav. Bank v. Heizer,* 200 Iowa 793. The fact question centers about what transpired at the time the new note and the mortgages were given. The contention of the appellees is that they did not see the old note at the time, had no idea that it was a forgery, and believed the representations made to them by Murphy and the members of the bank that they in fact owed an obligation to the bank, and were liable therefor. It is also their contention that they did not know that they were executing a chattel mortgage or a real estate mortgage, and that they were wholly de-

ceived and misled in regard thereto. On the other hand, the witnesses for the appellant contend that the entire matter was fully disclosed, that the old note was produced and turned over to the appellees, and examined by them at the time, and that the new note was given by them with a full understanding of the situation, and that the mortgages were duly executed to secure the same. It is utterly impossible to reconcile the testimony. The appellees are people of moderate education. They are able to read and write the English language understandingly. They had executed notes and mortgages before, and had had acknowledgments taken. They trusted Murphy implicitly. He had had extensive dealings for them, some of which involved the borrowing of money. He assured them that they owed the bank's claim, and urged them to "fix it up with the bank." They undoubtedly relied on his representations, and were persuaded by his assurances that the matter was "all right."

The evidence of the other parties present at the transaction (except D. J. Murphy, who was not a witness), is in direct conflict with that of the appellees as to what transpired. They contend that the matter was fully discussed at the time, and that the old note was produced, and turned over to the appellees, and examined by them with a full understanding of what was being done. We have examined the record with care. The conflict is irreconcilable.

There is evidence in the record very strongly tending to show that, before the note in suit was obtained, the bank was fully advised that the original note held by it was a forgery, and that the signature thereto was not the signature of appellees. This fact may in some measure account for the conduct of the appellant in, never notifying appellees that it held the note, and in not attempting to collect either the note or the interest thereon from September 23, 1922, when said note became due, until May 2, 1924.

The trial court had the great advantage of seeing the witnesses, which, in a case of this kind, is an important aid in ascertaining the truth.

There were minor circumstances developed in the case, but the main contention centers about the transaction at the home of the appellees on the day that the new note was exe-

cuted. We are disposed, upon consideration of the entire record, to concur in the conclusion of the trial court that the appellees have sufficiently carried the burden imposed upon them to impeach the transaction, and that the trial court did not err in decreeing cancellation of the instruments in suit.

The decree appealed from is—*Affirmed.*

EVANS, C. J., and STEVENS, KINDIG, and WAGNER, JJ., concur.