I. R. BOYD et al., Appellees, v. R. L. MILLER et al., Appellants.

No. 40148.

MAY 16, 1930.

REHEARING DENIED SEPTEMBER 22, 1930.

*McCoy & Beecher,* for appellants.

*Evans & Van Eman* and *Sager & Sweet,* for appellees.

WAGNER, J.—On February 22, 1927, the Aredale Savings Bank closed its doors, and L. A. Andrew, superintendent of banking, was appointed receiver, and took possession thereof. It is shown by the record that, on November 13 and 14, 1925, the said bank was under investigation by one L. H. Jurgemeyer, a bank examiner, the appointee of the superintendent of banking. Listed among the assets of said bank were the Stouffer and Brown notes hereinafter referred to, which were considered by the bank examiner as of doubtful value, and upon his demand, there was signed by the defendants, Walter J. Mullin, R. L. Miller, J. J. Beecher, and Orlie Miller, the following written contract:

"This Article of Agreement, made and entered into this 14 day of November 1925, by and between Walter J. Mullin and J. J. Beecher and R. L. Miller and Annie L. Mullin and Orlie Miller and C. H. McNider of ————— Iowa, as parties of the first part, and Aredale Savings Bank, of Aredale, Iowa, a corporation organized and existing under the banking laws of the state of Iowa, with its principal place of business at Aredale, Iowa, as party of the second part, witnesseth:

"Whereas, the aforementioned parties of the first part are officers, directors, stockholders or other parties interested in the said party of the second part; and,

"Whereas, the superintendent of banking has, by his examiners, recently made an examination of the affairs of said party of the second part, and has expressed the view and opinion that the following described bills receivable or other assets of the party of the second part are of doubtful value (a list of said assets being attached hereto and identified as 'Exhibit A'):

"Now, therefore, for and in consideration of the sum of one dollar ($1.00) to each of the parties of the first part, in hand

paid, and in consideration of the signing of this agreement by the other parties of the first part whose signatures are attached hereto, and for other valuable considerations in hand received, receipt of which considerations is hereby acknowledged by each of the parties of the first part, the said parties of the first part jointly and severally hereby guarantee payment on or before one year from this date of each and every of said bills receivable or any renewals of the same, and hereby waive notice of the acceptance of this guaranty and agree that this guaranty shall continue in full force and effect until the bills receivable or renewals thereof have been fully converted into cash.

"The failure of any of the above-named parties of the first part to duly sign and execute this instrument shall in no wise affect the liability of such of the parties of the first part as may sign and execute the same.

"This guaranty shall be binding upon the undersigned parties of the first part and their respective heirs, representatives and assigns, and shall be binding upon the said parties of the first part both jointly and severally.

"Witness the hands and seals of the parties of the first part, this 14th day of November, 1925.

"R. L. Miller,    Walter J. Mullin,
"J. J. Beecher,
"Orlie Miller."

All of the foregoing is on one sheet of paper.

Exhibit A, referred to, is in typewriting, upon a letterhead of the Aredale Savings Bank, and is attached to the back of the foregoing signed sheet. Said exhibit is as follows:

"Exhibit A.

"Attached to and made a part of Guaranty executed November 14th, 1925, by directors of the Aredale Savings Bank, Aredale, Iowa.

| Number | Name | Date | Due | Bal. |
|---|---|---|---|---|
| | C. W. Stouffer | 11/18/22 | 60 days | $2,200.00 |
| | C. W. Stouffer | 1/.2/23 | 3 mo. | 3,000.00 |
| | Jesse Bolei endorsed by | | | |
| | C. W. Stouffer | 11/18/22 | 4 mo. | 2,838.00 |

| 12017 | C. A. Brown | 12/28/23 | 6 mo. | 1,000.00 |
|-------|-------------|----------|-------|----------|
| 12016 | C. A. Brown | ,, ,, ,, | ,, | 97.50 |

Total Guaranteed 9,135.50''

After the foregoing document was signed, it was taken by the bank examiner, and filed with the superintendent of banking.

This suit against the defendants is founded upon the foregoing written contract. The notes referred to in Exhibit A, attached to the contract, have not been paid.

It is alleged in the petition that, on the 20th day of May, 1927, in a case entitled ''L. A. Andrew, Superintendent of Banking of the State of Iowa, Plaintiff, v. Aredale Savings Bank of Aredale, Iowa, Defendant,'' the district court of Butler County, Iowa, appointed the plaintiffs as trustees of the property and affairs of the Aredale Savings Bank, to liquidate the affairs of said bank, and that, in accordance with the order of said court, they have duly qualified as said trustees. No question is raised as to the right of the plaintiffs to prosecute this suit, it being conceded by the appellants that the plaintiffs are the successors to the rights of the bank in said contract and notes. It is alleged in the petition that the Stouffer and Brown notes referred to in the foregoing contract were executed unto the Aredale Savings Bank, and that no part of same have been paid. The execution of the foregoing contract is also alleged, and copies of the notes and contract are made a part thereof. It is also alleged that more than one year has elapsed since the date of said written agreement.

The defendants answered by a general denial, and pleaded conditional delivery of the contract; that there was no consideration therefor; that the same was obtained by means of fraudulent representations made by the bank examiner; and that the second page of the contract (Exhibit A) was not attached to the first page at the time when the contract was signed.

A verdict was returned in favor of the plaintiffs against all of the defendants for the amount due upon the notes referred to in Exhibit A according to their terms, and judgment entered accordingly. The defendant Walter J. Mullin, who was the cashier of the bank at and for many years prior to the time when

the contract was signed, has not appealed. From the judgment rendered, the three remaining defendants have appealed.

The appellants allege, as grounds of error, the action of the court in overruling their motion for a directed verdict, made at the close of plaintiffs' evidence and renewed at the close of all the evidence; the withdrawal of certain defenses from the consideration of the jury; the rulings of the court upon the introduction of testimony; and the assumption by the court that the Brown notes had been introduced in evidence, when it is claimed that there was no evidence in the record which would justify the jury in taking into consideration said notes in arriving at the amount of their verdict.

C. H. McNider, now deceased, was a stockholder and director of said bank. It will be observed that he did not sign the foregoing contract. The defendants pleaded, as an affirmative defense, a conditional delivery of the contract; that  the same was not to become operative, and should be of no force or effect, unless the signature of McNider was obtained. This was the sole defense submitted by the court to the jury. In other words, the court instructed the jury, in substance, that their verdict should be for the plaintiffs unless they found said affirmative defense established by a preponderance of the evidence. It is the contention of the appellants that the evidence conclusively establishes said alleged defense. With this contention we do not agree. The four signers, together with Annie L. Mullin and C. H. McNider, were stockholders and the directors of said bank. The four signers were the only persons at the meeting at which the examiner demanded a guaranty of the doubtful paper. Mullin was the cashier, and Orlie L. Miller the assistant cashier, of the bank. There is evidence in behalf of the appellants that there was some conversation about procuring the signature of McNider, but as to whether or not the instrument was to become operative as against those who signed, unless McNider's signature was obtained, is a disputed question. It will be observed that the contract contains the provision:

"The failure of any of the above-named parties of the first part to duly sign and execute this instrument shall in no wise

affect the liability of such of the parties of the first part as may sign and execute the same.''

The court properly instructed the jury that the defendants are not liable because of said quoted portion of the contract, if they found that the contract was not to become operative and effective against the defendants unless the signature of McNider was obtained. There is testimony by the appellants to the effect that the bank examiner said that he would get McNider to sign the contract, and that, if McNider refused to sign, he would tear it up or send it back. The examiner testified for the appellees:

''I did not say that I would get the signature of C. H. McNider. I did not make the statement that, if C. H. McNider didn't sign that guarantee, I would either tear it up or send it back.''

To set out the testimony more fully upon this proposition would only prolong the length of this opinion. We have read the record with care, and the question of the conditional delivery of the contract is clearly a disputed question of fact, for the determination of the jury.

The appellants further contend that, regardless of their affirmative defense of conditional delivery, the record fails to show any delivery of the contract. This contention is also devoid of merit. After the contract was signed, it was  taken by the bank examiner into his possession, without objection, and with the consent of the appellants. The contract was placed by the examiner with the superintendent of banking, who, under our statutory law, has general control, supervision, and direction of all banks incorporated under the laws of this state (Section 9140, Code, 1927), and who, under the circumstances, would be a proper custodian thereof. It is quite clear, under the record, that the instrument was delivered, unless it be that the instrument was only conditionally delivered, which, as we have seen, was a question of fact for the determination of the jury, and has been determined by the fact-finding body against the appellants.

It is contended by the appellants that the evidence discloses that the contract is without consideration. The contract, being

in writing, imports a consideration. This being true, the burden is upon the appellants to establish want of consideration. The record discloses that the $1.00 mentioned in the contract as a consideration has not been paid, but this does not establish want of consideration. We have held that this identical form of contract, executed by directors and stockholders of banks, under similar circumstances, is supported by a consideration. See *Andrew v. Farmers & Merch. State Bank,* 205 Iowa 712; *In re Estate of Prunty,* 201 Iowa 670. The cited cases are *stare decisis* as to this proposition. Also, see *Hills Sav. Bank v. Hirt,* 204 Iowa 940. In view of our previous pronouncements, it cannot be said that the contract herein involved is without consideration.

The appellants became witnesses in their own behalf, and testified as to a portion of a conversation occurring on November 14, 1925, which is relied upon by them as showing fraud and a conditional delivery of the contract. On cross-examination, over objection that it is violative of the Statute of Frauds, the plaintiffs drew out the whole of the conversation on the subject. As a result of the cross-examination, it was shown that the Stouffer and Brown notes, being those involved in this suit, were the ones which were under consideration. There is no error in the ruling of the court; for, when part of a conversation is given in evidence by one party, the whole of the conversation on the same subject may be inquired into by the other. See Section 11272, Code, 1927; *Hutton v. Doxsee,* 116 Iowa 13; *State v. Minella,* 177 Iowa 283.

The defendant Mullin, who had signed the contract, was called as a witness for the plaintiffs, and was shown the Stouffer and Brown notes involved in this suit, and was asked as to whether said notes were the notes referred to in the aforesaid written contract, and answered in the affirmative. This was over the objection that such evidence does not meet the requirements of the Statute of Frauds. The appellants had pleaded that the two sheets claimed by the appellees to constitute the contract were not attached at the time when it was signed by them. The answer of the witness was only one of identification,

and could not have been prejudicial to the appellants. By reason of Section 11288 of the Code, his testimony was not incompetent. The defendant Orlie Miller, assistant cashier, as witness for the appellants, testified that both sheets of the contract were prepared there that afternoon, and that the sheet which lists the notes (Exhibit A) carries (describes) the same notes that he (the bank examiner) insisted should be guaranteed. The testimony of the appellants, on cross-examination, properly elicited, clearly show that the notes involved in this suit were the ones discussed in the conversation and referred to in the contract. The appellants, as witnesses, may well be mistaken when they testify that Exhibit

 A was not attached to the contract, but we need not, and do not, pass upon that question. We have the contract in our possession, and, as hereinbefore stated, Exhibit A is attached to the back of the sheet which is signed; and if it was attached as it now appears, the first sheet would completely cover the exhibit. As hereinbefore stated, said Exhibit A is typewritten upon a letterhead of the Aredale Savings Bank. The signed sheet of the contract refers to Exhibit A, and said Exhibit A contains a description of the Stouffer and Brown notes, and contains the statement that it is attached to and made a part of guaranty executed November 14, 1925, by directors of the Aredale Savings Bank, Aredale, Iowa. Each sheet contains internal reference to the other. Since each portion of the contract bears internal reference to the other, the Stouffer and Brown notes are clearly identified by the contract itself, and the contract is taken without the Statute of Frauds, and was properly admitted in evidence. See *Morris Furn. Co. v. Braverman,* 210 Iowa 946. In an early case, *Lee v. Mahoney,* 9 Iowa 344, we held that several pieces of evidence (written evidence) introduced, are sufficient to take the contract without the Statute of Frauds, and that it is not necessary that the whole should be on one paper, nor that all the acts should be contemporaneous, nor that the parts be so entirely complete when brought together as to preclude the necessity of parol testimony to explain them. Also, see *Morris Furn. Co. v. Braverman,* supra. The contract was clearly established by competent testimony, and no tenable objection relative to the foregoing matters can be maintained by the appellants.

The appellants offered to prove that McNider was a man of large financial responsibility, and one in whom the other directors of the bank reposed a great deal of confidence. Upon objection, this testimony was excluded. There is no error at this point. The question at issue was only whether the arrangement or agreement was that the bank examiner was to procure his signature before the contract became effective.

The appellants contend that the court erred in withdrawing from the consideration of the jury their alleged defense of fraud. One representation relied upon is that the guaranty contract was for the purpose of satisfying the superintendent of banking. This representation is not shown to be false, and therefore cannot be asserted as a basis of fraud. Another alleged representation is that the signing and execution of the guaranty contract would not in any way increase the liability of the defendants, or any of them. There is testimony by the appellants, tending to establish the making of the representation. It will be observed that the alleged representation is a mere expression of opinion, or of a legal conclusion. The appellants rely upon *Owens v. Norwood-White Coal Co.*, 188 Iowa 1092; *Commercial Sav. Bank v. Kietges*, 206 Iowa 90; *Schipfer v. Stone*, 206 Iowa 328; *Baker v. Bockelman*, 208 Iowa 254, as authority for their claim that the alleged representation is sufficient to constitute a fraudulent representation. While said cases are clearly distinguishable from the instant case, we find it unnecessary to pass upon the question, because of the lack of other elements necessary to constitute fraud. The one asserting fraud must not have known that the representation was false, and the misrepresentation must have been one that he was justified in relying upon, and he must have relied thereon believing it to be true, and must have been induced thereby to act to his prejudice. Are these necessary elements of fraud established by the record? We answer in the negative. The signers of the contract and the bank examiner were dealing at arm's length; no confidential relationship existed between them. The appellants are men of ordinary intelligence. The cashier had had approximately 20 years' experience in the banking business. He partici-

pated in the conference, and signed the contract. There is testimony by one of the appellants that, during the conversation, Mullin maintained that the Brown notes were good, and could be collected, and that there would not be a loss of over $2,000 on all of this doubtful paper. The contract was read by the appellants, or could have been read by them. No misrepresentation as to the contents of the contract is claimed. The contract provides:

"The said parties of the first part jointly and severally hereby guarantee payment on or before one year from this date of each and every of said bills receivable," etc.

The four directors of the bank were present with the bank examiner at and prior to the time of the signing of the document. No legal advice was sought by them, or prevented. It cannot be claimed that the plain, unmistakable language of the contract which they signed does not mean what it says. One of the appellants testified that he realized that, according to the contract, he was assuming quite a responsibility, provided they (the directors) all signed it. He further testified: "I knew it [the contract] was a guarantee to guarantee the notes introduced in evidence here." It is quite clear that he knew of his liability under the terms of the contract. Another one of the appellants testified that he read the instrument before he signed, and knew what it said, and considered it a very treacherous document to sign. He was asked the question, "And did you believe him [the examiner] at that time?" and he answered, "Well, I am a little skeptical, and I do not believe everything strangers tell me, especially." The other appellant testified, in answer to a question as to whether he read the agreement before he signed it:

"Well, I am not quite sure. I got so used to signing papers up at the bank; most every time I went up, they had some papers to show up to me, and I depended altogether on them. They were hired to do the work, and I thought whatever papers they put out was all right."

If he did not read the contract, or have it read before signing, he is guilty of inexcusable negligence. See *Midland Mtg. Co. v. Rice,* 197 Iowa 711; *Shores-Mueller Co. v. Lonning,* 159 Iowa 95; *Lillie v. Shriver,* 190 Iowa 861. It is quite clear that,

under the record, the court was fully justified in withdrawing the alleged defense of fraud from the consideration of the jury, and that the appellants received the full benefit of all that they were entitled to, by the submission to the jury of their affirmative defense of conditional delivery. It appears that the Brown notes referred to in Exhibit A, constituting a part of the contract, have been placed in judgment. At the time of  the trial, the smaller note for $97.50 was identified as "Exhibit Q," and introduced in evidence. It appears that the original petition did not set out a copy of the $1,000 Brown note, but did set out a copy of another note purporting to be signed by Brown, in the principal sum of $827.87. During the trial, the plaintiffs had the $1,000 note identified as "Exhibit P," and offered the same in evidence. Upon objection, a colloquy occurred between counsel and the court, and plaintiffs' attorney suggested the filing of an amendment to the petition to cover the $1,000 note, and the court stated to plaintiffs' counsel, in substance, that it would be better for him to file his amendment, if he purposed so doing, and he (the court) would see what would develop. The amendment was filed, describing the $1,000 note, and stating that the same is in judgment. It appears that thereafter the court and all parties treated the aforesaid Exhibit P, the $1,000 Brown note, as in evidence. The defendants so treated it in making a motion for a directed verdict, and later in filing requests for instructions. The record of the judgments was not introduced in evidence. The court, having the notes before him, computed the amount due upon them, and inserted said amount in the form of the verdict, stating in his instructions that, if they found for the plaintiffs, they would sign the form of verdict in which had been inserted the amount due according to his computation. The jury found for the plaintiffs, and signed the form of verdict as directed. The appellants contend that the court erred in including in his computation the amount due upon the Brown notes, since neither the $1,000 note nor the judgments were introduced in evidence. This contention is devoid of merit. This action is not founded upon the notes, but upon the contract signed by the appellants. The record clearly identifies the Brown notes as included in the liability of the appellants under the contract. There is no plea or claim of payment of the notes or the judg-

ments, and it is clearly shown that they have not been paid. If the appellants were liable on the contract, then the amount due was only a matter of computation, and there is no claim that the computation is incorrect.

We have discussed all alleged grounds of error which seem to merit particular consideration. All complaints urged by the appellants have had our careful consideration, and we find no prejudicial error in the record; and the judgment of the trial court is hereby affirmed.—*Affirmed*.

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.