SIMON NOLTE, Appellant, v. ALBERTA B. NOLTE, Appellee.

No. 40574.

MARCH 17, 1931.

*H. Haehlen,* for appellant.

*E. P. Shea,* for appellee.

FAVILLE, C. J.—I.  J. S. Nolte, now deceased, was the son of the appellant, and husband of the appellee. Appellant is owner and holder of a note for the principal sum of $3,900, dated February 18, 1926, and bearing the signatures of J. S. Nolte and appellee. This action is to recover for past-due interest on said note. It appears that appellant held a prior note of J. S. Nolte's for said sum of $3,900, dated February 18, 1926, and due in one year from date. Said note bore interest at 4½ per cent, and was payable to appellant. The appellee was not a signer on said note. The note in suit bears the same date as the original note, to wit, February 18, 1926. The note in suit runs for a period of five

years from February 18, 1926. The note in suit was signed by appellee in the summer or fall of 1926.

Owing to the fact that the appellant is a German, and does not understand or speak English readily, his evidence is not as clear and expressive as might be desired. Regarding the execution of the note in suit he testified:

"Jack, J. S. Nolte's, name appears as the maker of the note. He is my son. He died a little over a year ago. He was married to the defendant in this case. Jack signed the note first, then Alberta, in the store at Burr Oak. They signed at the same time. Don't know if in the spring or summer time. I had bank in Ossian send Jack a note. Don't know if Alberta's name was on the Ossian note, I was sick at that time. [The "Ossian note" here referred to is the first note, which was payable at a bank in Ossian.] * * * Money was borrowed after Jack was married. · Wife didn't sign first note. This note was signed in the summer time. I loaned the $3,900.00 to John. * * * At the time John and Alberta signed this note at the store at Burr Oak, did you give John and Alberta back any note? A. Yes, I gave the old note back. Q. You gave them the old note,—was it the same day this note was signed? A. Yes, the same time. * * * A. I make this note in the summer time; in the summer time Jack and Alberta signed it. Q. That note you gave back to him was given by him at the time you loaned John $3,900, or else it was a renewal of that note, —is that true? A. Yes. Q. But you do know and you are sure the note you gave back to him— A. Yes. Q. —was given to him at the time they signed this note [referring to one in suit]? A. Yes. Q. Did you give it back to him before or after the note was signed? A. At the same time. Q. About the same time you give it back for their signing this new note? A. What? Q. Why did you give the old note back? A. She signed this note, and then I gave the old note back. I am 79 years old,— almost 80. A. She signed this note, and then I gave the old note. * * * He wanted five years, then I made this note. Q. Wasn't that note [referring to note in suit] given when Ossian note was surrendered? A. Yes, exactly."

The witness also testified:

"Q. Now, it seems this note in suit, this note you are now

suing on, was dated in the winter time,—bears date of February, these people claim, Alberta and John didn't sign this note until the summer. Can you tell us why you brought this note until the summer? Can you tell us why you brought this note up in the summer time to have it signed?' A. I think it was the summer time. Q. Why did you take it up in the summer time? A. I gave him more chance for a longer time. Q. Did he ask you to do it? A. Yes, he wanted—Jack—he said he wanted a longer time to pay it. I gave him five years.''

The appellee testified:

''I signed note in suit in the fall of the year 1926,—about August or after. First saw note when I signed in husband's store at Burr Oak. My husband and plaintiff were present. Plaintiff produced note, and asked me to sign it. When I signed it, my husband's name was on it. Did not see him sign it. Never signed any note prior to Exhibit 1. Do not know when husband signed it. Q. What was said at that time, if anything, by either Simon Nolte or your husband, relative to you signing the note? A. He told me I had to sign it. Q. Who was it that told you you had to sign it? A. Jack and his father— Q. Why did you sign that note? A. To protect my husband's health. Q. Was he well or sick at that time? A. Very serious condition. Q. Was he able to be around? A. Yes. Q. Did he do any work? A. No. Q. And had he been worrying about this note? A. Very much. Q. At the time of signing, was anything said by Simon Nolte to you other than what you have already told us? A. No. Q. Was there any agreement made between you and Simon Nolte at the time you signed that note? A. No.''

The foregoing constitutes the substance of all the material evidence in the case. The court directed a verdict for the appellee on the sole ground that there was no consideration for the signature of appellee to the note in suit.

Section 9484, Code, 1924, is as follows:

''Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value.''

Code Section 9488 is, in part, as follows:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course."

Under these statutes, where want of consideration is pleaded, and defendant gives evidence tending to show such want of consideration, the burden is on the plaintiff to show, by a fair preponderance of the evidence, upon the whole case, that there was consideration. *Spurway v. Read,* 210 Iowa 710. It is a well established rule that, where the holder of a promissory note agrees with the maker to extend the time of payment by the execution of a new note on condition that the maker's wife sign the new note, and the wife does sign, and the extension is granted, the defense of want of consideration for the wife's signature is unavailing. In such a case, it is sufficient if the holder parted with consideration, even though the consideration did not pass to the wife. *American Com. & Sav. Bank v. Kramer,* 206 Iowa 49; *First Nat. Bank of Winterset v. Phillips,* 203 Iowa 372; *Commercial Sav. Bank of Ames v. Carey,* 207 Iowa 1060.

The case at bar does not come within the above rule, because there is no evidence that it was agreed between appellant and the maker that the extension of the time of payment by the execution of the new note was upon the express condition that the wife should sign the new note.

II. It is a fundamental rule that consideration passing from the payee of a note to the maker will support the liability of one who signs contemporaneously, as a surety or co-maker. *Myers v. Sunderland,* 4 G. Greene 567; *First Nat. Bank of Scribner v. Golder,* 89 Neb. 377 (131 N. W. 600); *Ewan v. Brooks-Waterfield Co.,* 55 Ohio St. 596 (45 N. E. 1094).

Two questions are involved at this point: (1) Was there consideration passing from the payee to the maker; and (2) did the appellee sign contemporaneously as a surety, or co-maker? Code Section 9485 is as follows:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such, whether the instrument is payable on demand or at a future time."

It is a familiar rule that a note given in renewal of the maker's note is based on a consideration. *Robinson v. Robinson,* 147 Iowa 615; *Chemical Co. of Canton v. Pegram,* 112 N. C.

614 (17 S. E. 298) ; *Merchants' Bank v. McClelland*, 9 Colo. 608 (13 Pac. 723) ; *Garrigue v. Kellar*, 164 Ind. 676 (74 N. E. 523).

Under the record, there was sufficient evidence to take the case to the jury on the question of consideration. The jury could have found that the old note was surrendered and the time of payment extended for five years by the execution of the new note. Under the authorities and the statute, this would constitute a consideration for the note in suit.

Did the appellee sign the note as surety or co-maker contemporaneously with its execution? The evidence was sufficient to carry this question to the jury. The appellant testified:

"Jack [the maker] signed the note first, and then Alberta [appellee] in the store at Burr Oak. They signed at the same time."

He also testified:

"Q. At the time John and Alberta signed this note at the store at Burr Oak, did you give John and Alberta back any note? A. Yes, I gave the old note back. Q. You gave them the old note,—was it the same day this note was signed? A. Yes, the same time."

He also testified:

"Q. Wasn't that note [referring to note in suit] given when Ossian note was surrendered? A. Yes, exactly."

Appellee testified that, when she signed the note, her husband and the appellant were present. It is true that she also testified that:

"Plaintiff [appellant] produced note, and asked me to sign it. When I signed it, my husband's name was on it. Did not see him sign it. Never signed any note prior to Exhibit 1. Do not know when husband signed it."

The record presented a question for the jury as to whether or not the appellee signed the note in suit contemporaneously with the maker, her husband. It is the rule that, if the surety or co-maker signs *after* the completed transaction between payee and maker, there must be a new consideration, to bind the surety or co-maker. *Northern Tr. & Sav. Bank v. Ellwood*, 200 Iowa

1213. Under the record in this case, we cannot hold, as a matter of law, that the appellee signed the note in suit *after* the transaction was fully completed between the appellant and the maker, her husband. The jury might have found, under the record, that it was contemporaneously therewith.

. The court erred, upon the record, in directing a verdict for the appellee, and the judgment must be—*Reversed.*

STEVENS, DE GRAFF, ALBERT, WAGNER, and GRIMM, JJ., concur.