IN RE ESTATE OF J. E. HUMPHREY.

WINIFRED HUMPHREY et al., Appellees, v. MARGARET HUMPHREY, Administratrix, Appellant.

No. 44674.

June 20, 1939.

E. R. Hicklin and W. O. Weaver, for appellant.

Thompson & Monk and McCoid, McCoid & McCoid, for appellees.

Oliver, J.—This controversy concerns a claim against the estate of John E. Humphrey, deceased, based upon two promissory notes for $7,000 and $3,000, respectively. Claimants are the two unmarried sisters of decedent, and at the time of the trial were aged 68 and 61 years, respectively. The family was Welsh, having moved to this country a few years after the birth of Winifred, the elder of the claimants. However, they continued to speak and write the Welsh language among themselves so that claimants never did acquire a perfect understanding and ability to use English. At the death of their father, Edward Humphrey, in 1909, claimants were living at the farm home near Wyman, Iowa, and resided there for some years thereafter, removing to Racine, Wisconsin, in 1914.

After Edward Humphrey's death, John E. Humphrey, decedent herein, apparently became the business head of the family, continuing so to act until his death in 1937. He served as executor for the estate of his father, and upon his mother's death a few years later handled her affairs, also acting as guardian and administrator for the estate of a niece. He also handled the business and financial affairs of claimants, loaning their money, collecting and remitting interest payments thereon, and caring for their personal taxes. In the latter connection he referred to himself as guardian, agent and trustee for claimants. In some instances he appears to have handled their financial dealings in his own name. It may be here said that there is no suggestion of overreaching in any of his dealings with claim-

ants. On the contrary it is conceded he was considerate and fair with them.

At their father's death claimants received $4,500 which had been deposited in a bank in claimants' names, which deposit was not administered as part of his estate. Although the $4,500 principal was borrowed by John for several years, said principal amount did not form the basis of either of the notes in suit, and its earnings are only indirectly involved herein. Out of it grew a $5,000 loan made by John for claimants to third parties, bearing interest at 5½% which John regularly collected and paid to claimants.

Under the will of the father each of the claimants received $3,500 which was the basis of the $7,000 note in suit. Apparently this $7,000 was used by John, at interest, until 1914, when it was loaned to one Huston by John, who gave the borrower his personal check and took a note payable to claimants. Huston paid John interest on $7,000 until February 28, 1920, when he gave a check payable to John for $4,385, of which $4,000 was principal and $385 interest. The $3,000 principal balance, plus $195 interest, was paid by Huston to John, February 28, 1924. At the time the $4,385 payment was received John secured a cashier's check, not for $4,385 but for $4,000, payable to claimants. The record does not show by whom this $4,000 check was cashed. However, it does show that John continued to remit interest on the entire $7,000. Claimants admitted receiving the $385 interest, but testified they never received the $4,000. The bank records of claimants show only the deposit of the amount of the interest less personal tax. After Huston paid John the $3,000 balance in 1924, this $3,000 was temporarily loaned by John to a relative and John still continued to pay interest to claimants on said $7,000. In 1929, John told claimants he had taken the $7,000 and shortly afterwards went to Racine and there gave them the $7,000 note in suit to evidence this indebtedness. At various times later he made payments of interest thereon aggregating $850.

The other note in suit was for $3,000. This note was the third renewal of a $5,000 note from John to claimants made in 1913, upon which $2,000 principal was paid in 1916. The various items composing the original $5,000 note are not shown in detail. However, it appears that John had borrowed $3,000 willed to his mother by his father, and had contracted with her

to pay claimants upon her death two thirds of this less certain expenses. The record also shows claimants were entitled to some money from another estate administered by John, that he owed them certain interest and also that they sold John certain household goods, etc., received through their parents' estates.

Claimants testified that on August 22, 1913, an accounting and settlement of these various items was had between them and John, that it was agreed he owed them $5,000 and he gave a note for said amount. In 1916, the principal of this obligation was reduced to $3,000, and John went to Racine and gave claimants a new note for that amount.

In 1909, upon Edward's deathbed, John, who had been willed the major portion of the estate subject to certain cash bequests, promised his father he would give claimants the money for a home. John fulfilled this obligation in 1915, by giving claimants about $6,000 which was used for that purpose.

It will be noted that the money for building claimants' house had been turned over to them prior to the execution of this $3,000 note in 1916. Later John renewed this note by giving a new note for $3,000, and destroying the old note. This process was repeated on March 6, 1930, when the $3,000 note in suit was made and delivered. All interest upon the $3,000 obligation appears to have been paid to the time of the execution of the $3,000 note in suit. The note in suit shows credits aggregating $500 for interest thereafter paid upon it.

In the trial the signature of John upon the notes held by claimants was conceded and they were thereupon admitted in evidence. This established a prima facie case for claimants. In re Estate of Work, 212 Iowa 31, 233 N. W. 28. Denial of liability was based upon the affirmative defenses of lack of consideration, payment and mutual mistake. The case was tried to a jury. At its conclusion the court directed a verdict in favor of the claimants, thereby ruling that the evidence as to each of the affirmative defenses was insufficient to warrant its submission to the jury. From the judgment establishing the claim against the estate of John Humphrey, this appeal is prosecuted. The error assigned challenges the correctness of the aforementioned ruling of the trial court.

I. Execution and delivery having been established, each note was presumed to have been issued for a valuable consideration and the burden of showing lack of consideration was

upon the defense. Sections 9476, 9484 and 11961, Code of Iowa; In re Estate of Chismore, 175 Iowa 495, 157 N.W. 139; Penn Mutual etc. Co. v. Orr, 217 Iowa 1022, 252 N.W. 745; Booth v. Johnston, 223 Iowa 724, 273 N.W. 847.

We find no substantial evidence tending to prove want of consideration. Furthermore, the uncontradicted record shows the $3,000 note was the third renewal of a note originally given as the result of the 1913 accounting and settlement between decedent and claimants. Nolte v. Nolte, 211 Iowa 1289, 235 N.W. 483. The $7,000 note was given for money belonging to claimants which decedent, while acting for them, retained for his own use. That he was indebted in some amount on this item is not seriously disputed. Therefore, not only was there failure to overcome the statutory presumption of consideration but there was also further showing of consideration. Under the record it is clear the trial court did not commit error in refusing to submit this issue to the jury.

II. Upon the plea of payment the burden of the issue was likewise upon the defense. Sections 11961 and 11962, Code of Iowa; Kern v. Kiefer, 204 Iowa 490, 215 N.W. 607; Wilson v. Else, 204 Iowa 857, 216 N.W. 33; First Trust etc. Bank v. Kruse, 219 Iowa 1229, 260 N.W. 665; Slezak v. Krisinger, 202 Iowa 422, 210 N.W. 436.

There was no evidence or contention that any part of the principal of either of these notes was paid after they were made, or that any interest was paid other than as endorsed thereon. In appellant's argument reference was made to certain moneys allegedly turned over or paid claimants by decedent many years prior to the execution and delivery of either of the notes in suit.

Strictly speaking, a note, although merely evidence of indebtedness, cannot be paid prior to its execution. Therefore, a plea of payment should be based upon something done after the execution of the instrument. We do not think these transactions which were had long prior to 1929 may properly be considered under a plea of payment. Hence there was no question for the jury upon this issue, and the court did not err in so ruling.

It should be said that counsel for appellant do not seriously contend otherwise and have set up a plea of mutual mis-

take based upon said alleged transactions. This proposition will next be considered.

III. It is strenuously contended that there was evidence to substantiate the plea that the notes were executed as the result of mutual mistake on the part of John and claimants and that the trial court erred in refusing to submit this issue to the jury. The alleged mutual mistakes involve each note.

The mistake relative to the $3,000 note is predicated upon the $6,000 which John turned over to claimants in 1915, for the building of their house, in accordance with his promise to their father upon the latter's deathbed. As we understand appellant's theory it is that John was entitled to and intended to have this $6,000 credited upon the note (then $5,000) held by claimants but by mistake he did not do so; that claimants intended he should have this $6,000 credit on the $5,000 note but also mistakenly overlooked the matter. A further postulate essential to this theory is that both John and claimants by mistake forgot this $6,000 in 1916, when he paid the $5,000 note in part and reduced it to $3,000, and later when he renewed the loan and again in 1930, when he again renewed the loan and executed the $3,000 note in controversy. Necessarily included in this line of reasoning is the assumption that each year for more than 15 years John by mistake paid, and claimants by mistake collected, the annual interest on the obligation.

Under section 11962 Code of Iowa 1935, claimants were subjected to examination upon the questions of payment and consideration. Although the notes were executed in 1929 and 1930, this examination covered all the financial dealings of the parties for the twenty-nine years prior to the trial. The transactions inquired into were for the most part not handled by claimants, but were largely cared for by John who was acting in a fiduciary capacity for them. Furthermore, claimants were questioned in English, a language which they used and understood imperfectly. Their evidence should be considered in the light of such circumstances.

Winifred Humphrey testified:

"Father died and told John to give us the money for a home and John carried it out. That was not contained in the will. That was instructions he had given John and John did it. That was $6,000.00 and it was paid to us."

This testimony was not contradicted.

Eleanor Humphrey gave substantially the same testimony. But she also testified:

"A. I mean the five thousand was the balance of what he owed us after—.

"Q. After he paid you Six Thousand. A. That included surely."

She also testified:

"Q. I mean did he actually send you $6,000.00? A. He gave an account of it, I would say because it was included in that balance of Five Thousand."

She also testified the word "included" meant left not paid, not put into the bank to keep.

Although this witness unequivocally testified at various times in her extended examination that the $5,000 and $6,000 matters were distinct and separate obligations, it is urged that the quoted testimony and other like testimony creates a conflict by reason of which the defense of mutual mistake should have been submitted to the jury. We think the record indicates that the apparent discrepancies in the testimony of this witness were primarily due to her inability to correctly express herself in the English language and that the conflict is in shadow rather than in substance. Therefore, we conclude it does not furnish the basis for a substantial inference of oversight or mistake on the part of claimants in failing to credit the $6,000 house money on the $3,000 obligation.

The other alleged mistake has to do with the $7,000 note and grows out of the $4,000 principal payment by Huston to John in 1920. The argument of appellant is that the payment of the $4,000 cashier's check to someone creates an inference that claimants received the money, despite their testimony to the contrary. Appellant says this inference, in connection with other circumstances, causes a conflict and resultantly a question of fact for the jury. We are asked to assume that John and his sisters forgot this $4,000 payment in 1929, and that the $7,000 note was based upon this oversight. As in the case of the other note argument of this character must also assume that all parties forgot this $4,000 payment at once, and continued to forget it during the entire nine years prior to 1929,

during which time interest upon the entire $7,000 was regularly paid by John to claimants.

The weakness of appellant's position lies in the lack of other circumstances in support of the circumstance of the $4,000 cashier's check. It stands practically alone in the face of positive denials that claimants received this money. No other reasonable construction can be given their evidence. Under the record in this case we are not prepared to hold their testimony was doubtful, inconsistent or unworthy of belief. Continued interest payments by John upon the entire $7,000 cannot be said to support appellant's theory of payment.

That both John and claimants should completely overlook and forget the true situation relative to obligations aggregating $10,000, and should continue to pay and receive annual interest thereon and execute new instruments evidencing debts which did not exist appears almost beyond the realm of probability. Other circumstances militate against the position taken by appellant. There is no showing or contention that John ever disputed the obligations. During his last illness he spoke of his indebtedness to claimants and said he would pay it. Apparently no question of mistake as to either note was raised until after his death. The only reasonable conclusion from the entire record is that neither note was executed under mistake. Nor was there substantial evidentiary showing in support of the affirmative defense of mutual mistake. Kern v. Kiefer, supra.

Therefore, the direction of the verdict against appellant was correct.—Affirmed.

Mitchell, C. J., and Richards, Sager, Hamilton, Stiger, Bliss, and Miller, JJ., concur.