R. F. HOOVER, Appellee, v. CLINTON HOOVER, Appellant.

No. 44903.

April 2, 1940.

Rehearing Denied September 27, 1940.

Bennett Cullison, George O. Hurley, and Raymond Mc-Grath, for appellant.

Ernest M. Miller, James J. Jennings, and Miller, Hines & Higgins, for appellee.

HALE, J.—E. E. Hoover, the father of the plaintiff and of the defendant, died testate in 1920, leaving to his wife a life interest in his estate, and to his four sons, I. E. Hoover, E. A. Hoover, Clinton Hoover, and Ross Hoover, all of his estate, subject to the life interest of his wife, in substantially equal shares. The real estate consisted of 240 acres of land.

About a year after the father's death the four brothers entered into a written contract, by the terms of which the plaintiff herein and I. E. Hoover were to purchase the one-half interest in .the land belonging to the other two brothers for $36,000. A mortgage of $40,000 was to be executed, payable at the death of the life tenant, in which defendant was to participate to the extent of $10,000. The balance of defendant's share of the purchase price was settled by the payment of $3,000 in cash by the plaintiff; a debt of $500 owed to the plaintiff by the defendant was to be canceled, and plaintiff executed and delivered to the defendant a note of $4,500. The settlement between I. E. Hoover and E. A. Hoover does not enter into this case, but the interest which plaintiff acquired was that of the defendant. At that time plaintiff was occupying and operating the farm. About 18 months after the alleged contract was signed, plaintiff and his brother I. E. Hoover, who had purchased the other one fourth of the estate, called upon the defendant in Omaha, where he lived, at which time the question of the mutual cancellation of the contract was discussed. The plaintiff stated that he was financially embarrassed

and that the defendant could foreclose or he (plaintiff) would deed the land back. As a result of this conversation defendant stated that he would take back the interest in the land which he had sold to his brother. The record does not disclose that anything was said about the $3,000 that defendant had received as a down payment. Two or three months later the plaintiff wrote the defendant a letter enclosing a note in the sum of $3,500, the amount of the down payment and the $500 debt canceled in the original transaction, and requested defendant to sign the note. To this letter no reply was made. Later the parties came together at Omaha and plaintiff stated that he would like to have the defendant sign the note, as he was hard up and it would establish credit for him. Testimony was admitted that defendant stated that if he signed the note it was to be understood that he would never pay a penny of it, but that the plaintiff would have to get it out of the proceeds of the farm, either from the rents or as profit at an advance sale, and on the trial defendant testified that the plaintiff was to take the proceeds from the defendant's one-fourth interest as well as from the plaintiff's one-fourth interest to pay this note. The defendant then stated that he would sign the note, and on the next day mailed it to the plaintiff with the plaintiff's note of $4,500. The note of $3,500 drew interest at 7 percent, was for one year, and was renewed five years later for $4,000. Five years after that a renewal note in the sum of $4,700 was given. Later a renewal note in the sum of $2,500 was given, and on March 1, 1935, the note was again renewed in the sum of $1,910, with interest at 5 per cent; and this last renewal note is the one in controversy.

Suit was brought on the note. Defendant admitted its execution, and by way of defense pleaded a want of consideration, and that the note was delivered on condition that it. be paid from crops and rentals and the sale price of real estate. By way of reply plaintiff pleaded that the renewal was a sufficient consideration, and that, being a renewal note, given with full knowledge of any alleged defense, it constituted a waiver. At the close of defendant's testimony a verdict was

directed by the court in favor of the plaintiff, and from this action of the court defendant appeals.

■ ■ I. The defendant claims the court was in error in directing a verdict, alleging that there was not sufficient evidence of consideration. Defendant alleges that the renewal did not constitute new consideration, but left the renewal open to the same defenses as the original. The plaintiff does not rely wholly upon the various renewals from time to time. The defendant himself states in his answer:

"That at the time of the cancellation of said contract, and as a part of the agreement to cancel the same, and at the request of the plaintiff, the defendant herein executed and delivered to said plaintiff, a promissory note in the sum of $3,500.00 * * * ."

Following this statement was the allegation as to the manner of payment. This statement of the defendant is an affirmation of the claim of the plaintiff that the note was executed as a part of the transaction when the land was returned to the defendant. The $3,500 was exactly the amount which defendant had received from plaintiff before the negotiations for the return of the land. The contention of plaintiff is that a note given as a result of settlement between the parties is based upon a sufficient consideration, citing In re Humphrey's Estate, 226 Iowa 1230, 286 N. W. 488; Booth v. Johnston, 223 Iowa 724, 273 N. W. 847; First State Bank of Corwith v. Williams, 143 Iowa 177, 121 N. W. 702, 23 L. R. A., N. S., 1234, 136 Am. St. Rep. 759, and cases cited therein. Execution and delivery having been established, the note is presumed to have been issued for a valuable consideration and the burden of showing lack of consideration is on the defendant. Section 9484, Code 1935. It appeared from defendant's own statement that the original note for $3,500 was given as a part of the settlement, and this of itself would indicate a consideration. But in addition there should be considered the repeated renewals of the note from time to time. The original note was given either in the latter part of 1920 or the early

part of 1921, while the note in suit was executed March 1, 1935. The first renewal, about five years after the original note, was accomplished by the plaintiff sending by mail to the defendant a blank note for approximately $4,000. This note the defendant executed and returned to the plaintiff and the plaintiff then returned to the defendant the original note, marked canceled. The second renewal was accomplished in the same manner, except that it was for $4,700; and in the same manner the third renewal took place; and on March 1, 1935, defendant made and delivered to the plaintiff the note in suit for $1,910. There is nothing in the record to indicate that any conditions were attached to any of the renewals, and there is no evidence of any further conversations attending any such renewals. The extension of time and the reduced rate of interest would furnish a consideration for an additional promise to pay. See First Trust Joint Stock Land Bank v. Cuthbert, 215 Iowa 718, 246 N. W. 810, and cases therein cited (page 723); First State Bank of Corwith v. Williams, supra; Cram & Sons v. Central Trust Co., 205 Iowa 408, 216 N. W. 71; Nolte v. Nolte, 211 Iowa 1289, 235 N. W. 483. It is additionally indicated that a part of the income from the farm was applied to the reduction of the indebtedness, so that the final renewal was much less than the original note.

It is urged also by the plaintiff that if the original note lacked consideration, yet, with full knowledge of all the facts and of a defense to the original note, the defendant executed the renewal notes, this would constitute a waiver of any defect. National Bank of Decorah v. Robison, 199 Iowa 1044, 203 N. W. 295; State Savings Bank v. Deal, 200 Iowa 490, 203 N. W. 293; Bacon v. First National Bank, 204 Iowa 887, 216 N. W. 274; Walnut State Bank v. Mueller, 202 Iowa 961, 211 N. W. 215; Home Savings Bank v. Heizer, 200 Iowa 793, 205 N. W. 467, and cases cited therein. This court has held, as in Bacon v. First National Bank, supra, that, if the defendant executed a renewal in lieu of the original, with knowledge that the original was a forgery, then the renewal was a waiver of fraud and defendant would be bound

thereby. Defendant, citing 7 Am. Jur. page 941, section 248, argues that, while the giving of new paper for old, providing it is given in payment for the old or in exchange of paper, involves a mutual consideration, even though liability on the old paper is disputed, but that this is not true where the old or exchange paper is absolutely void and worthless. But we do not consider that the original note was void and worthless. Under all the facts in the case we think there was value in the original note. For more than 15 years defendant's share of the income from the farm was permitted to be applied on the note, and the four renewals, together with the reception of the income, and the fact that no claim at any time was made by the defendant that he was not liable, would indicate not only that there was value in the original note but that the defendant so understood. Our conclusion must be that there was consideration and that the question of lack thereof, under all the facts in the case, could not have been submitted to the jury.

■ ■ II. Defendant also complains that the court refused to submit to the jury the question of conditional delivery. The defendant testified that before he executed the note he told the plaintiff that the plaintiff would have to receive his pay out of the proceeds or profit on the land, or that he would have to take the value out of the land or any increase in the sale value. There is no question but that, as stated in Davenport v. Mullins, 200 Iowa 836, 839, 205 N. W. 499, 500:

"A distinction must always be observed between an agreement which provides for the conditional delivery of a note and one which requires payment thereof to be made out of a particular fund only."

While the general rule is that parol evidence is admissible to show that a note was conditionally delivered, it is not admissible to show that the payment of the note was to be made out of a specific fund, one being a condition precedent and the other a condition subsequent. The cases cited by defendant and the argument based on such cases all refer to instances where

the delivery of the instrument is contingent upon some future event or circumstance. Such is not the case here. The validity of the instrument sued on was not dependent upon some future contingency. The circumstances of the case all show that the defendant was not only to receive the income from his interest in the farm, but that in many instances he did receive it. He himself has treated the note as valid and binding. It is not disputed that evidence in relation to conditional delivery as between the immediate parties may be admissible. See section 9476, Code of 1935; Walker v. Todd, 225 Iowa 276, 280 N. W. 512, and cases cited therein. But we do not think the instant case comes within the rule. The note was delivered. The condition, if any, was as to the manner of payment. Evidence along this line tending to contradict the terms of the written instrument would be inadmissible. See International Stock Food Co. v. Beshey, 200 Iowa 165, 204 N. W. 265; Mechanics Savings Bank v. Gish, 200 Iowa 463, 203 N. W. 687, and cases cited therein. In the Gish case the court held that, in an alleged defense of conditional delivery setting up that certain notes were to be paid from the earnings of a corporation, this did not constitute conditional delivery, and that evidence thereof was incompetent. See also, Hills Savings Bank v. Hirt, 204 Iowa 940, 216 N. W. 281. The cases of Boyd v. Miller, 210 Iowa 829, 230 N. W. 851, and Walker v. Todd, supra, cited by defendant in support of his claim that parol evidence is admissible to show conditional delivery, do not apply under the circumstances of this case. In the former case the instrument was not to become operative until an additional signature was obtained; in the second case the liability was to depend upon a future contingency. The distinction between evidence that payment shall be made out of a certain fund and conditions relating to the delivery or taking effect of the instrument is a marked one, and this distinction is quite clearly explained in Hills Savings Bank v. Hirt, supra, and cases cited, and citing 22 C. J. 1150.

Also we must consider the fact that the original note was returned and new notes were executed at least four times. No

evidence was offered, nor is there anything in the record to indicate any condition imposed upon any of the renewal notes. Any defense to the original note was as well known to the defendant at the time of the execution of each of the renewals as at the time of the institution of the suit. We think it is shown that, even assuming that there was a conditional delivery in the first instance, the subsequent acts of the defendant showed waiver. See Anderson, Lipton & Co. v. Reinking, 204 Iowa 239, 213 N. W. 775; Euclid Avenue State Bank v. Nesbit, 201 Iowa 506, 207 N. W. 761, and cases cited therein.

Our conclusion is that there was no error of the court in sustaining the motion for a directed verdict; that there has been no showing of lack of consideration, nor any competent evidence showing conditional delivery. The order of the court directing a verdict was right, and the cause is affirmed.— Affirmed.

HAMILTON, C. J., and MITCHELL, STIGER, SAGER, BLISS, OLIVER, MILLER, and RICHARDS, JJ., concur.